PER CURIAM.
Robyn Blessing, Bill Blessing, and Bama’s Best Party Sales, Inc. (collectively “the Blessings”), filed an action against Tupperware, U.S., Inc., Patricia Hurley, and Bill Hurley. In their complaint, the Blessings sought damages for fraud, breach of contract, and other claims not at issue here. Both Tupperware and the Hurleys filed counterclaims against the Blessings, alleging breach of contract. Based on a holding that the fraud claims against the Hurleys were barred as a matter of law by the statute of limitations, the circuit court entered a summary judgment for the Hurleys on those claims. The circuit court held that there were genuine issues of material fact on the fraud claims against Tupperware and on the breach of contract claims. The claims and counterclaims were tried to a jury. The jury found for the defendants on the Blessings’ claims, denying relief. On the counterclaims, the jury awarded the Hurleys $41,142.73 and Tupperware $300,000. The Blessings raise issues regarding the submission to the jury of the fraud defenses to the counterclaims, the instructions to the jury, and the admission or exclusion of certain evidence.
In 1988, Robyn and Bill Blessing were living in El Paso, Texas, where Robyn had been a Tupperware dealer since 1979 and Bill was a carpenter. For almost 10 years, Robyn had consistently been one of the top independent Tupperware sales managers in the country. Robyn made it known that her goal was to own a Tupperware distributorship, and she had an application for one on file with Tupperware.
The Hurleys had owned and operated a Tupperware distributorship in Montgomery since 1976. In May 1988, the Hurleys decided to retire as Tupperware distributors and notified Tupperware accordingly. Tupperware offered the Blessings the opportunity to purchase the Hurleys’ Montgomery franchise. Tupperware confirmed this offer in a letter of June 1, 1988, in which Tupperware relayed certain information regarding this distributorship, including the fact that its sales volume had fallen. After a trip to Montgomery, the Blessings agreed to purchase the distributorship. Subsequently, the Blessings entered into a franchise agreement with Tupperware, signed a promissory note to purchase the Hurleys’ goodwill, and relocated to Montgomery to take over the distributorship.
The Montgomery distributorship continually lost money the entire time the Blessings operated it. From July 1988 to January *31 1994, the Blessings bought products from Tupperware, on account, that they in turn resold to their sales force. Tupperware contends that the Blessings’ debt to it continued to grow, escalating to approximately $700,-000, and that, therefore, Tupperware decided in late 1993 to ask the Blessings to retire.
The Blessings allege, among other things, that both Tupperware and the Hurleys misrepresented to them throughout the course of negotiations leading up to the purchase of the franchise that the Hurleys had not “worked” the distributorship and that, if the Blessings would work the area, the distributorship would be successful. According to the Blessings, after purchasing the distributorship and moving to Montgomery, they discovered that the distributorship had in fact been fully worked by the Hurleys and that changed market conditions had caused the Hurleys’ sales to fall year after year despite their continued efforts.
During its deliberations, the jury asked for the instructions on fraud again. The circuit judge instructed the jury further, starting with the statute of limitations and proceeding through the fraud instructions. The Blessings contend that the additional instructions were outside the scope of the jury’s request because, they claim, the jury requested additional instructions only on the definition of “fraud.” They further contend that the additional instructions unduly emphasized the statute of limitations and implied that the Blessings’ claims against Tupperware were time-barred, thereby prejudicing the Blessings. We disagree. After the circuit court received the jury’s request, the following colloquy occurred:
“THE COURT: They want the instructions on fraud again.t[1]] I don’t know anything to do except read it all to them.
“MR. PARKER [the Blessings’ attorney]: Well, Your Honor, the statute of limitations isn’t in the fraud.
“THE COURT: It’s the first issue they have to decide. I’m giving all of — Bring them out.”
There is no indication that the jury requested only the definition of “fraud” again, rather than, as the judge said, the “instructions on fraud.” As the trial judge pointed out, the statute of limitations was the first issue the jury had to decide in regard to the fraud claims against Tupperware. On the face of the record, the instructions did not unduly emphasize the statute of limitations and did not prejudice the Blessings. No reversible error is shown in the trial judge’s decision to again give instructions on the statute of limitations along with the other instructions on fraud.
The Blessings next contend that the trial judge’s improper instruction caused the jury to fail to apply the “justifiable reliance” standard to the statute-of-limitations defense as to the Blessings’ fraud claims against Tupperware.[2] Nothing in the record supports the Blessings’ contentions. The circuit court gave the jury a correct instruction on justifiable reliance and, without evidence to the contrary, we will presume that the jury followed that instruction. Holland v. City of Alabaster, 572 So.2d 431, 433 (Ala.1990).
The Blessings next contend that the circuit court, acting contrary to Rule 32, Ala.R.Civ. P., did not admit into evidence the depositions of Richard Lisec and Glenn Kolb in their entirety. The circuit court gave the jury an instruction that these depositions were admitted only for the limited purpose of showing what the Blessings’ expert reviewed and based his opinion on. Rule 32 states, in pertinent part:
“(a) ... At the trial ..., any part or all of a deposition, so far as admissible under the Alabama Rules of Evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had rea *32 sonable notice thereof, in accordance with any of the following provisions:
“(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: ... (B) that the witness is at a greater distance than one hundred (100) miles from the place of trial....”
The Blessings contend that the depositions of Lisec and Kolb meet all of the requirements of Rule 32 and that, therefore, the circuit court committed reversible error in not admitting them in their entirety.
The following discussion took place regarding these depositions:
“THE COURT: Okay. I’ve already said that I’m not admitting them for — for the limited purpose of that is what he used to form his opinions [sic]. They are not admitted into evidence as deposition testimony.
“MR. PARKER: And, Your Honor, I guess I need to take this up with you now. I have you a copy of Rule 32.
“THE COURT: You told me about that, I think, the other day.
“MR. PARKER: I tried to.
“THE COURT: Yes. And I’m not changing my mind. If you want a deposition in, you’re going to have to read whatever you want in for the jury to consider it as testimony.” •
(Emphasis added.) We first note that, generally, rulings on the admissibility of evidence are within the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of that discretion. Preferred Risk Mut. Ins. Co. v. Ryan, 589 So.2d 165 (Ala.1991). Moreover, the appellees cite Century Plaza Co. v. Hibbett Sporting Goods, Inc., 382 So.2d 7 (Ala.1980), as establishing the reading of a deposition as the proper procedure for introducing that deposition into evidence under Rule 32.
“The record in this case points up what may be a misconception by bench and bar about the procedure for using a deposition during trial. Unless there is agreement to allow the document itself into evidence, the proper method for getting relevant, material and competent evidence contained in a deposition before the factfinder is as follows:
“The examining attorney would obtain the services of an individual who would act as the deponent; as the examining attorney read the questions from the deposition, the individual acting as the deponent would read the answers given by the deponent. When this method is used, the opposing party would have an opportunity to object to any irrelevant, immaterial or incompetent evidence. In no event, unless by agreement of the parties, should the deposition itself be admitted into evidence as an exhibit, whether the trial is before the court without a jury or before the court and a jury.”
Century Plaza, 382 So.2d at 11 (emphasis added). The circuit court offered the Blessings an accepted method of introducing this testimony into evidence. Even though this procedure of reading deposition excerpts to the jury had been used throughout this trial, the Blessings chose not to do that with the Lisec and Kolb depositions. Therefore, under the circumstances, we hold that the circuit court did not err in limiting the purpose for which the jury could consider these depositions.
Next, the Blessings argue that the circuit court erred by not permitting Fred Rush to testify to what they say were similar fraudulent acts by Tupperware. The Blessings argue that evidence of similar fraudulent acts is admissible to show a fraudulent intent, plan, or scheme, provided that the acts meet the requirements of similarity in nature and proximity in time. Shoals Ford, Inc. v. McKinney, 605 So.2d 1197, 1200 (Ala.1992), overruled on other grounds by Life Ins. Co. of Georgia v. Smith, 719 So.2d 797 (Ala.1998). While this is a correct principle of law, the Blessings have not shown that the circuit court erred in ruling that Rush’s testimony failed to meet the requirements for admitting evidence of similar fraudulent acts. Fred Rush bought a Tupperware distributorship in 1976. The Blessings allege that Rush would have testified to acts of fraud committed by Tupperware when he signed a franchise agreement in 1987. The Blessings argue *33 that the acts Rush would have testified to were not too remote in time. In support of their argument, they cite Davis v. Davis, 474 So.2d 654 (Ala.1985), in which this Court affirmed a trial court’s holding allowing evidence of similar fraudulent acts that had occurred 10 years before the fraud that was at issue in that case. However, in Davis, this Court simply held that the trial court did not abuse its discretion in allowing such evidence. That holding does not constitute authority for holding that the court in the present case abused its discretion by excluding evidence of allegedly fraudulent acts that had occurred nearly 10 years before the alleged fraud at issue.
Further, in this ease, the circuit court clearly stated that remoteness in time was not its only concern.
“In order to admit other false representations in a fraud case, the other representations must be similar in nature to those alleged in the complaint, and the transaction [involved] must be of substantially the same character.”
Massachusetts Mut. Life Ins. Co. v. Collins, 575 So.2d 1005, 1008-09 (Ala.1990), cert. denied, 499 U.S. 918, 111 S.Ct. 1306, 113 L.Ed.2d 240 (1991). Tupperware argues that the circumstances of the fraud alleged by Mr. Rush were not sufficiently similar to the circumstances of the fraud alleged by the Blessings. Also, the Blessings were allowed to call three other pattern-and-practice witnesses to testify to similar conduct by Tupperware, and the circuit court stated that the Blessings could call Mr. Rush to testify as to matters other than pattern and practice. The decision to allow testimony is a matter within the discretion of the trial court, and this discretion is not reversible in the absence of abuse. Mason & Dixon Lines, Inc. v. Byrd, 601 So.2d 68, 72 (Ala.1992). We see no error in the trial court’s holding that Mr. Rush’s testimony was too remote, insufficiently similar, and cumulative. The circuit court did not abuse its discretion in excluding Mr. Rush’s pattern-and-practice testimony.
The Blessings next argue that the circuit court abused its discretion by allowing three Tupperware distributors to testify to Tupperware’s good reputation, in rebuttal to the testimony of the Blessings’ pattern-and-practice witnesses. The Blessings contend that allowing the testimony of these distributors violated Rule 404, Ala.R.Evid., which disallows evidence of reputation to show action in conformity therewith on a particular occasion. However, Tupperware argues that the testimony of these witnesses was not offered as evidence of good reputation, but was offered for “other purposes,” as allowed by Rule 404(b). The record supports Tupperware’s argument. After the Blessings argued to the court that these witnesses should not be allowed to testify, the following occurred:
“THE COURT: I’ll tell you what. Why don’t we first see what the purpose of calling the distributors [is]. If you want to make an offer, we might eliminate—
“MR. STONER [attorney for Tupperware]: Your Honor, I think that it’s clearly been suggested to the jury that you can’t make a go in this business, that it’s not economic for you to run a distributorship, and we want to bring in people that are successful to—
“THE COURT: And what is your response to that?
“MR. PARKER: Your Honor, if all the issue is is that, fine.”
(Emphasis added.) The Blessing have shown no abuse of discretion by the circuit court in allowing the testimony of the three distributors.
Next, the Blessings argue that the circuit court erred in excluding evidence indicating that Tupperware had paid the Hur-leys’ legal fees and expenses throughout this lawsuit and evidence suggesting that Tupperware had used abusive discovery tactics. As stated above, a trial court has considerable discretion in determining the admissibility of evidence, and its rulings in that regard will not be reversed on appeal absent an abuse of that discretion. Grayson v. Dungan, 628 So.2d 445, 447 (Ala.1993). Further, “this Court will not reverse a judgment rendered on a jury verdict, even in the face of an erroneous ruling by the trial court, unless the appellant demonstrates that he was substantially prejudiced by the error.” Preferred *34 Risk Mut. Ins. Co. v. Ryan, 589 So.2d 165, 167 (Ala.1991). The Blessings present nothing to support a conclusion that the circuit court abused its discretion in excluding this evidence and nothing suggesting that, if it did abuse its discretion, the error was sufficiently prejudicial to warrant a reversal of this judgment, which was rendered on a jury verdict.
Last, the Blessings argue that the circuit court improperly refused to charge the jury on the Blessings’ fraud defense to the Hur-leys’ counterclaim based on a promissory note. We agree. The Blessings’ complaint alleged fraud against Tupperware and against the Hurleys. As mentioned earlier, the circuit court entered a summary judgment for the Hurleys on these claims, based on a holding that they were barred by the two-year statute of limitations for fraud claims.[3] The circuit court held that whether the fraud claims against Tupperware were barred by the statute of limitations was disputed and, therefore, it presented those claims to the jury. In addition to stating fraud causes of action against Tupperware and the Hurleys, the Blessings also asserted fraud as an affirmative defense to the breach-of-contract counterclaims filed against them by Tupperware and the Hurleys. The Blessings submitted a proposed jury charge on this defense that would have addressed the claims by both Tupperware and the Hur-leys. However, the trial judge refused to give the instruction as to the Hurleys and gave it as a defense to Tupperware’s counterclaim only.
It is well settled that the statute of limitations for fraud actions applies only to claims based upon fraud, and that it does not apply where fraud is pleaded as a defense. Boyett v. Oakes, 518 So.2d 37, 40 (Ala.1987). The only reason we can glean from the record for the circuit court’s ruling on this issue is that, at one point in the discussion on this defense, the court said, “I think that’s confusing to the jury since there is no fraud before them as far as the Hurleys.” This was not a proper reason to refuse to charge the jury on a defense that the Blessings were entitled to as a matter of law. As a result, the jury was precluded from considering the Blessings’ contention that they were not liable under the promissory note because the Hurleys had fraudulently induced them to enter into the transaction of which the note was a part. We hold that the circuit court erred to reversal in refusing to instruct the jury on the defense of fraud in the inducement as to the Hurleys’ breach-of-contract claim.
We reverse the judgment to the extent that it denied the Blessings’ motion for a new trial on the Hurleys’ counterclaim alleging breach of contract, and we remand the cause for a new trial on that counterclaim. The judgment of the circuit court is affirmed as to the remaining claims and counterclaims.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
HOOPER, C. J., and MADDOX, ALMON, SHORES, HOUSTON, KENNEDY, COOK, SEE, and LYONS, JJ., concur.

. This statement by the court is the only indication in the record of the terms of the jury’s request.

. This action was filed before March 14, 1997; therefore, the “justifiable reliance” standard applies. Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala.1997).

. In its summary judgment, the circuit court held that it was undisputed that the Hurleys’ alleged fraud practiced upon the Blessings was discovered by the Blessings in July 1988. This action was not filed until January 10, 1994.