I respectfully dissent. On June 30, 2000, when this Court released its original opinion, I dissented and Justice England and I joined a dissent written by Justice See. On this application for rehearing, Justice See has recused himself. The majority today withdraws the opinion released on June 30 and substitutes a different opinion; Justice See's dissent is not included with the opinion released today. I adhere to the views Justice See expressed in the dissent he issued on June 30, 2000; rather than attempt to restate those views, I attach a copy of Justice See's June 30, 2000, dissent as an appendix to this special writing.
ENGLAND, J., concurs.
 APPENDIX TO JUSTICE LYONS'S DISSENT "SEE, Justice (dissenting [from original opinion of June 30, 2000]).
 "The dispositive issue is whether the Alabama Medical Liability Act of 1987, Ala. Code 1975, § 6-5-540
et seq. (the `AMLA'), applies to this action against a *Page 836 
physician. The plaintiff alleges that the defendant, Dr. Robert Allen, improperly `fondled, stroked, caressed or otherwise touched' the plaintiff's genitals during medical examinations. Dr. Allen testified that there was no medical reason for him to engage in the conduct of which he is accused. As to one of the alleged incidents, Dr. Allen testified that he did not remember whether he touched the plaintiff's genitals, but that if he did it was medically appropriate. As to all the other alleged incidents, Dr. Allen stated that there was no medical reason for him to stroke the plaintiff's genitals and that he did not do so.
 "The trial court held that the AMLA applies to this case and that that Act bars the plaintiff from presenting evidence indicating that Dr. Allen had fondled or stroked the genitals of other male patients. The trial court refused to allow Mock to introduce the testimony of five other patients. The jury found for Dr. Allen, and the court entered a judgment on the verdict. The majority affirms. I do not believe the AMLA applies to all of the alleged incidents; therefore, I must respectfully dissent.
"I.
 "Shellie Mock, Jr., was injured in an automobile accident in 1991. In November 1991, he became a patient of Dr. Allen, a neurologist. Dr. Allen examined or treated Mock several times in November and December 1991. In October 1993, Mock filed this action against Dr. Allen, alleging that Dr. Allen had committed the tort of battery against him when, he said, Dr. Allen `fondled, stroked, caressed or otherwise touched [Mock's] genitals without [Mock's] consent and with no medical reason.'[1] Five years later, in 1998, Dr. Allen, for the first time, asserted that the AMLA applied to this case. Dr. Allen filed a motion in limine, asking the trial court to exclude all evidence of similar acts involving other patients, on the ground that such evidence would be inadmissible, pursuant to § 6-5-551.[2] Mock opposed the motion, arguing that the AMLA did not apply to this case, because, he argued, Dr. Allen's alleged improper touching of Mock's genitals was outside the scope of the medical treatment. The trial court granted Dr. Allen's motion and excluded the testimony of five other male patients of Dr. Allen, each of whom would have testified that Dr. Allen had improperly stroked his penis during physical examinations or treatment.[3] Thus, the trial was essentially a credibility contest between Mock — who testified that Dr. Allen on several occasions improperly touched Mock's genitals — and Dr. Allen — who claimed he did not. The jury, apparently finding Dr. Allen a more credible witness than Mock, returned a verdict in favor of Dr. Allen, and the trial court entered a judgment on that verdict.
"II.
 "Mock argues that the AMLA does not apply to his action against Dr. Allen and, therefore, that the trial court erred in excluding the other five patients' testimony that Dr. Allen improperly touched their genitals. Subject to one qualification, I agree.
 "The Legislature declared that it enacted the AMLA in response to increasing health-care costs caused by `the increasing threat of legal actions for alleged medical injury.' Ala. Code 1975, § 6-5-540. The AMLA applies to actions against a health-care provider alleging a `breach of the standard of care.' Ala. Code 1975, § 6-5-540 et seq. A breach of the standard of care is the `fail[ure] to exercise such reasonable *Page 837 
care, skill and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in a like case.' § 6-5-548. Thus, the AMLA applies to conduct that is, or that is reasonably related to, the provision of health-care services allegedly resulting in a medical injury. Just as the Alabama Legal Services Liability Act does not apply to every action against a person who is a lawyer, see Cunningham v. Langston, Frazer, Sweet Freese, P.A., 727 So.2d 800 (Ala. 1999), the AMLA does not apply to every action against a person who is a doctor, see Thomasson v. Diethelm, 457 So.2d 397 (Ala. 1984). It does not, I believe, apply to an action alleging sexual molestation, where the health-care provider concedes that the acts complained of were not medically relevant. Although Mock's claims arise out of conduct that took place at a time when there was a doctor-patient relationship for the purpose of examination and treatment, see Thomasson, that fact alone cannot subject to the provisions of the AMLA all conduct by the doctor, however unrelated to the provision of medical services. Mock alleges that Dr. Allen, during otherwise legitimate medical examinations, did something that Dr. Allen concedes would have been outside the scope of legitimate medical treatment.[4] At trial, Dr. Allen testified that, with one possible exception, he had no reason to, and did not, examine Mock's genitals.
 "The majority concludes that the AMLA applies to Mock's claims against Dr. Allen. As to the alleged incident that Dr. Allen testified might have involved a medically appropriate examination of Mock's genitals, I agree. However, as to the other alleged incidents, I disagree. Dr. Allen testified that, as to those alleged incidents, there was no medical reason for him to touch Mock's genitals, and he has flatly denied doing so. Dr. Allen should not be able to avail himself of the protections of the AMLA with respect to these alleged incidents, which by Dr. Allen's own admission do not involve an alleged breach of the standard of care to be followed in rendering medical treatment.
"III.
 "The trial court excluded the testimony of Dr. Allen's other patients because the AMLA prohibits the introduction of evidence concerning acts other than the one `alleged by [the] plaintiff to render the health care provider liable to [him].' Ala. Code 1975, § 6-5-551. Had the trial court not incorrectly concluded that the AMLA applied, that court would have had the discretion to admit or to exclude the proffered evidence, see, e.g., Bama's Best Party Sales, Inc. v. Tupperware, U.S., Inc., 723 So.2d 29, 32 (Ala. 1998), except as to the alleged incident regarding which Dr. Allen testified that he might have examined Mock's genitals for medical reasons. I would reverse the judgment in favor of Dr. Allen and remand this case for a new trial on the alleged incidents of battery regarding which Dr. Allen has denied touching Mock's genitals; the AMLA would not apply to that trial. Accordingly, I dissent from the affirmance of the judgment in favor of Dr. Allen. Because of the implications of the majority's affirmance — an affirmance based on the conclusion that the AMLA applies to a claim against a physician even if the allegation of liability is based on an act or omission that is not even arguably a part of the physician's provision of health-care services,[5] I believe the trial court's judgment should be reversed and the case remanded.
"_______________ *Page 838 
[1] "Mock also sued Southeast Alabama Medical Center (`SAMC'), where he had been a patient under Dr. Allen's care for a few days. The trial court entered a summary judgment for SAMC; that summary judgment is not at issue in this appeal.
[2] "Ala. Code 1975, § 6-5-551, provides:
 "`In any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care the plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff. The plaintiff shall amend his complaint timely upon ascertainment of new or different acts or omissions upon which his claim is based; provided, however, that any such amendment must be made at least 90 days before trial. Plaintiff shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission. Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief can be granted.'
"(Emphasis added.)
[3] "Three of the witnesses had been minors when they were Dr. Allen's patients. One of the adult witnesses, who went to Dr. Allen seeking treatment for headaches, would have testified that `[o]n at least four or more occasions, Dr. Allen masturbated [him] until he ejaculated.' Another would have testified that, although he had no complaints about his prostate, rectum, or groin, Dr. Allen `checked' his rectum on two occasions, and that, on a third visit, Dr. Allen rubbed lotion on his thighs and then `grabbed' his penis, at which time, he said, he looked at Dr. Allen with incredulity and Dr. Allen abruptly left the room. At least two of the witnesses would have testified that Dr. Allen did not wear gloves when he stroked their genitals.
[4] "Dr. Allen testified in his deposition that `there was no medical or neurological reason that I would have needed to fondle, stroke, or caress Mr. Mock's genitals during the period of time that I saw him from November 19 through December 10, 1991.' He further testified, `There are situations under which a physician may need to stroke, in a medical sense, not in a sexual sense, stroke a person's genitals for purpose of other examination; within the context of my dealing with Mr. Mock, there is no reason that I am aware of that I would have needed to have stroked his genitals, and I did not do that.'
[5] "Under the principle implicit in the majority's decision, were a doctor to shoot a patient, the AMLA would apply if that shooting took place during a medical examination."