[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 15, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-10491

_____

D. C. Docket No. 07-00832-CV-CG

GORDON RIPPS,

Plaintiff-Counter
Defendant-Appellant-
Cross-Appellee,

versus

D. LEON POWERS,

Defendant-Counter
Claimant-Appellee
Cross-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Alabama

_____

(December 15, 2009)

Before DUBINA, Chief Judge, BIRCH and SILER,[*] Circuit Judges.

_____

[*]Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting
by designation.

PER CURIAM:

Appellant/Cross-Appellee Gordon Ripps and Appellee/Cross-Appellant Leon Powers appeal the district court's grant of summary judgment on all breach of contract and related claims in this diversity case. Ripps and Powers undertook a business relationship in the mid-1990s, established first by an oral joint development agreement. A more narrow written agreement creating joint ownership of specific development interests followed in 1999.

The joint venturers were unable to abide by the terms of their agreements. Ripps sued first, claiming Powers breached the written agreement. Powers asserted counterclaims based upon Ripps's alleged breach of the oral agreement. We hold that the district court correctly granted summary judgment on all of the claims in this case except for Ripps's claims based on the written agreement. We affirm in part, reverse in part, and remand to the district court for trial on Ripps's breach of contract and related claims.

## I. BACKGROUND

Gordon Ripps and Leon Powers seek to resolve claims arising from their now-defunct business relationship. Powers alleges that, in 1996, Ripps induced him to enter into an oral agreement covering all property they undertook to develop in South Alabama. Powers would contribute his business connections, Ripps his

real estate license, and the two would share equally in the ventures. Ripps disputes the existence of this oral agreement. Powers testified in his deposition that the oral agreement was intended to last longer than one year, though no term was specified by the parties.

In 1999, Powers and Ripps entered into a written agreement allowing Ripps to share equally in Powers's ownership of several specific properties. The agreement stated that Ripps had earned an equal share in "Sportsman's[] Marina LP and all Related Properties" by his past acts in closing on Sportsman's Marina. The agreement, signed and notarized, did not by express words in the body indicate that it was under seal.

Powers alleges that Ripps breached the oral agreement by refusing to share about $1.6 million in real estate commissions he earned from sales of condominiums in "The Moorings" project, developed by an organization that also owned and developed Sportsman's Marina. Powers alleges that, at the time he found out about Ripps's breach in June, 2000, he repudiated the written contract. Ripps alleges that this repudiation did not occur until the summer of 2005. Though Powers claims the contract was repudiated in 2000, he admits that on three separate occasions as late as 2004, he submitted invoices to, and received payment from, Ripps for expenses related to the entities described in the written agreement.

It is undisputed that Powers received distributions from the entities referenced in the written agreement in 2000, 2006, and 2007. These distributions were for about $40,000, $250,000, and $1.2 million, respectively. Ripps claims that he did not know of the 2000 distribution until after he filed suit in 2007 but does not sue to recover that distribution.

Ripps asserts four distinct claims, all based on their contractual relationship: breach of contract, declaratory judgment, accounting, and fraudulent suppression. Powers counterclaims, asserting three claims against Ripps based on the formation of the written contract and violation of the oral joint development agreement: fraudulent inducement, breach of fiduciary duty, and breach of contract.

The district court, hearing the case based on its diversity jurisdiction and applying Alabama law, granted summary judgment on all claims. It held that the statute of limitations precluded Ripps's suits on the written agreement, because it was repudiated and breached first in 2000, more than six years before the suit was filed. It held that the statute of frauds prohibited Powers's claims on the oral contract because it was contemplated to last longer than one year but was not in writing.

## II. STANDARD OF REVIEW

4

We review *de novo* a district court's grant of summary judgment. *Fanin v. U.S. Dep't of Veterans Affairs*, 572 F.3d 868, 871 (11th Cir. 2009).

## III. DISCUSSION

### A. Ripps's Claims

### 1. Breach of Contract and Related Claims

The district court held that the statute of limitations precluded Ripps's suit on the written contract. The district court order indicated that the statute of limitations on all of Ripps's contract claims began to run in 2000 for a number of reasons: Powers anticipatorily repudiated the contract in 2000, Powers first breached the contract in 2000, and the oral and written agreements were in fact just one agreement that the parties abandoned in 2000. Each of these reasons, taken individually, is insufficient to bar Ripps's claims on the written contract.

The applicable statute of limitations for breach of contract claims is six years. Ala. Code § 6-2-34(9) (2005). Though Ripps claims that the notarized contract is "under seal" and therefore subject to a ten year statute of limitations, Alabama law is clear that for a contract to be "under seal" it must express that intention in the body of the contract. *Crane v. Pringle*, 378 So. 2d 721, 723 (Ala. 1979). The written contract in this case states no such intention.

The statute of limitations begins to run when the contract is breached, not

when the contract is repudiated. In *City of Mobile v. Sumrall*, 727 So. 2d 118 (Ala. Civ. App. 1999), the plaintiff sued the city in 1997 after not receiving promised retirement benefits. The city argued that the six-year statute of limitations had run because it notified the plaintiff in 1987 that it would not pay the benefits. The court held that the statute of limitations did not begin to run until 1995, when the plaintiff was entitled to begin receiving benefits. *Id*. at 120.

In this case, the statute began to run at breach, not when the contract was verbally repudiated by Powers. As in *City of Mobile*, the advance notice of intent by Powers not to honor the contract has no effect on the running of the statute of limitations in this case. The statute began to run when the contract was actually breached.

Likewise, a distinct limitations period attaches to each breach of an ongoing contract. *See* Ala. Code § 6-5-280 ("[I]f the breaches occur at successive periods in an entire contract . . . an action will lie for each breach . . . ." ); *Bowdoin Square, L.L.C. v. Winn-Dixie Montgomery, Inc.*, 873 So. 2d 1091, 1104 (Ala. 2003) (holding that breaches of a lease for periodic rent create separate causes of action). Powers characterizes the unshared distributions in 2006 and 2007 as "damages" flowing from his original breach of the agreement in 2000. He relies on *Stephens v. Creel*, where the Alabama Supreme Court held that "in a contract action based

6

upon a warranty to construct a house in a workmanlike manner, the cause of action accrues and the statute of limitations begins to run on the date the defendant completes performance." 429 So. 2d 278, 280 (Ala. 1983).

Powers attempted reliance on the narrow holding of *Stephens* falls flat. The alleged breaches by Powers's in this case are more like failure to pay periodic rent than the failure to construct a home in a workmanlike manner. The joint ownership agreement here was an ongoing relationship, like a lease agreement. It was not like a construction contract, where the accomplishment of a single object fulfills the contract. The unshared distributions in 2006 and 2007 were not damages flowing from the initial breach of the contract but were successive breaches in and of themselves. As a result, we conclude that the statute did not begin running on these claims until the breach actually occurred, when Powers failed to share each distribution he received.

Finally, there is no evidence in the record that supports the district court's conclusion, against both parties' assertions, that the two agreements here were really just one agreement abandoned by the parties in 2000. Powers himself testified at his deposition that he submitted invoices to, and received payment from, Ripps for expenses made in connection with their joint ownership interests in 2000, 2003, and 2004. The conclusion that mutual rescission occurred in this case

7

was based on a disputed material fact and cannot be affirmed.

We reverse the district court's grant of summary judgment on Ripps's breach of contract, declaratory judgment, and accounting claims related to the written agreement for the unshared distributions in 2006 and 2007 and remand these claims to the district court for further proceedings consistent with this opinion.

## 2. Fraudulent Concealment

Ripps additionally asserts that Powers's failure to report receipt of distributions from their jointly owned entities constituted the tort of fraudulent concealment. In Alabama, "mere breach of a contractual provision is not sufficient to support a charge of fraud." *Brown-Marx Assocs., Ltd. v. Emigrant Sav. Bank*, 703 F.2d 1361, 1370-71 (11th Cir. 1983) (citing *McAdory v. Jones*, 71 So. 2d 526, 528 (Ala. 1954) (holding that only a promissory fraud claim may arise from a breach of contract)). Ripps cannot bring a fraud claim based upon Powers's failure to alert Ripps to Powers's breach of contract. We affirm the grant of summary judgment on this claim.

## B. Powers's Claims

### 1. Breach of Fiduciary Duty and Breach of Contract

We agree with the district court that Powers's claims on the oral agreement

fail because the contract is unenforceable under the statute of frauds. Under Alabama law, "[e]very agreement which, by its terms, is not to be performed within one year from the making thereof" must be in writing. Ala. Code § 8-9-2(1). Testimony about the duration of the contract by the party suing upon it is significant evidence of the contract's term. In *Cox Nuclear Pharmacy, Inc. v. CTI, Inc.*, we held that the deposition testimony of a contracting party that the contract would continue for more than one year brought the contract within the statute of frauds. 478 F.3d 1303, 1309-10 (11th Cir. 2007), *cited in Williams v. Hill*, 17 So. 3d 229, 233 (Ala. Civ. App. 2009).

Here, Powers himself testified at his deposition that the intended term of the contract was for more than one year. As a result, the evidence indicates that the contract was contemplated to last for more than one year and was within the statute of frauds. Because it was not in writing, Powers's claims based on the contract fail as a matter of law. We affirm the grant of summary judgment in favor of Ripps on these contract-based claims.

### 2. Fraudulent Inducement

The district court broadly categorized Powers's fraudulent inducement claim as based on the unenforceable oral agreement, though the pleaded counterclaim indicates that it is based on the formation of the written contract. We briefly note

9

that the two-year statute of limitations has run on the affirmative fraud claim because Powers alleges that he discovered Ripps never intended to honor their ongoing contracts in 2000. *See* Ala. Code § 6-2-3 (extending an expired statute of limitations for two years after fraud is discovered). As a result, fraud in the inducement may only be a defense to Ripps's affirmative claim. *See Bama's Best Party Sales, Inc. v. Tupperware, U.S., Inc.*, 723 So. 2d 29, 34 (Ala. 1998). We affirm the grant of summary judgment on Powers's fraudulent inducement claim.

## IV. CONCLUSION

We affirm the district court's grant of summary judgment on all of the claims and counterclaims in this case except for those claims asserted by Ripps based on the written agreement.

**AFFIRMED in part, REVERSED in part and REMANDED.**