SMITH, Justice.
Woven Treasures, Inc., and Mina Esfa-hani appeal the trial court’s summary judgment in favor of Hudson Capital, L.L.C. We affirm.

Facts and Procedural History

The action arises from the liquidation of the inventory of a retail store known as Old Mobile Furniture by defendant Hudson Capital. Woven Treasures, a seller of oriental rugs, and Esfahani, the owner of Woven Treasures (hereinafter referred to collectively as “the plaintiffs”), sued Hudson Capital in the Mobile Circuit Court, asserting that Hudson Capital improperly possessed and sold rugs the plaintiffs say they had consigned to the owner of Old Mobile Furniture, Richard Clarke. The plaintiffs asserted claims of conversion, trespass to property, unjust enrichment, negligence, and wantonness.
Old Mobile Furniture was the name under which a company known as TSR Imports, Inc., operated. Sometime in 2005 TSR Imports defaulted on a loan from Compass Bank that it had secured in part with the inventory of Old Mobile Furniture. A representative of Compass Bank subsequently contacted Hudson Capital, a company engaged in the inventory-liquidation business, to see whether Hudson Capital was interested in purchasing the inventory of Old Mobile Furniture.
Hudson Capital, after conducting a walk-through of Old Mobile Furniture and a Uniform Commercial Code (“UCC”) search regarding the merchandise at the store, decided that it was interested in purchasing the inventory of Old Mobile Furniture. On August 26, 2005, TSR Imports, Compass Bank, and Hudson Capital entered into a tripartite “Agreement to Conduct a ‘Going Out of Business Sale’ ” whereby Hudson Capital agreed to pay Compass Bank $385,000 for the right to conduct a liquidation sale of the merchandise at Old Mobile Furniture and to retain all proceeds of the sale as well as the unencumbered rights to all unsold merchandise. Pursuant to the agreement, the sale would begin on or about August 29, *908 2005, and continue for 10 weeks. The agreement states:
“This letter shall serve as the agreement between Hudson Capital, LLC ... and TSR Imports, Inc., d/b/a Old Mobile Furniture ... with respect to the conduct of a ‘Going Out of Business’ sale (the ‘Sale’) at [Old Mobile Furniture’s] retail store located at 967 Hillcrest Road, Mobile, Alabama 86695 (the ‘Store’).
[[Image here]]
“... [TSR Imports] hereby appoints [Hudson Capital] as its agent for the purpose of conducting the Sale in accordance with the terms of this Agreement. In consideration of the right to conduct the Sale, [Hudson Capital] shall pay to [TSR Imports] (or as [TSR Imports] shall designate in writing) the sum of $385,000 (the ‘Guaranteed Amount’). After payment of the Guaranteed Amount and all Sale Expenses, [Hudson Capital] shall retain all Proceeds of the Sale as its fee for conducting the Sale hereunder.... [Hudson Capital] shall pay to [TSR Import’s] secured lender, Compass Bank, the Guaranteed Amount on the Sale Commencement Date. If [Hudson Capital] has been unable to sell any Merchandise during the Sale Term, such Merchandise shall become the property of [Hudson Capital], free and clear of all liens, claims and encumbrances.”
The agreement defines the term “Merchandise” as “all of [TSR Imports’] owned retail inventory located at the Store on the Sale Commencement Date.... ”
On August 26, 2005, Hudson Capital and TSR Imports also entered into a security agreement whereby TSR Imports granted Hudson Capital “a security interest in and to (i) all of the Merchandise located in the Store, (ii) all Proceeds, and (iii) all proceeds arising therefrom....” The agreement expressly authorized Hudson Capital to file a UCC financing statement describing the merchandise in order to perfect the lien granted to it by TSR Imports.
Among the merchandise Hudson Capital obtained from Old Mobile Furniture were rugs the plaintiffs had allegedly consigned to Richard Clarke individually and/or to Reproduction Galleries, a furniture store Clarke had previously owned and that was operated by an entity known as Reproduction Galleries, Inc.[1] In January 2001, Reproduction Galleries and Woven Treasures entered into an agreement pursuant to which Reproduction Galleries would display rugs provided by Woven Treasures on a consignment basis. That agreement states:
“Woven Treasures herewith engages Reproduction Galleries, Inc., to provide space for the sale of inventory provided by Woven Treasures on an individual consignment basis in exchange for a commission amount set and agreed upon by both parties and in accordance to each rug sold by Reproduction Galleries, Inc. Such individual consignments of rugs will be made by separate documents which are subject to the terms herein, and those separate documents shall contain specific reference to the selling price, commission, delivery and identification of each individual rug.
*909 [[Image here]]
“Once the item(s) have been sold to a customer by Reproduction Galleries, Inc., Woven Treasures shall be entitled to the purchase price agreed upon by the Parties whether or not the customer has paid in full. Woven Treasures shall be entitled to receive the purchase price agreed upon by the Parties hereto, less the commission amount for Reproduction Galleries, Inc., within ten (10) days of each sale, whether or not the customer has paid Reproduction Galleries, Inc., in full.”
Pursuant to this agreement, Woven Treasures executed 9 consignment slips that each listed 4 to 11 rugs. The consignment slips varied as to the name of the consignee: four slips listed “Reproduction Galleries”; three slips listed “Reproduction Gallery”; one slip listed “Reproduction”; and one slip listed “Reproduction Gallery/Old Mobile Furniture.”
Approximately two years after Reproduction Galleries and Woven Treasures had executed the consignment agreement, Reproduction Galleries went out of business. Esfahani testified that Clarke told her that he would be opening a furniture store in a new location and that she replied, “[TJhat’s a great idea.” Esfahani further testified that Clarke specifically told her that he would move the consigned rugs to the new store, Old Mobile Furniture, and that she told him, “it’s fine with me.” Esfahani did not personally transfer the consigned rugs to Old Mobile Furniture, but she testified that “I see [sic] my rugs at the new location” and that she regularly sent her employees to Old Mobile Furniture to inventory the consigned rugs. Esfahani further testified that she believed that displaying the rugs at Old Mobile Furniture was a continuation of the consignment agreement Woven Treasures had entered into with Reproduction Galleries.[2]
After the consigned rugs were moved to the new location of Old Mobile Furniture, TSR Imports defaulted on its loan with Compass Bank. The bank sought to sell its interest in the inventory of Old Mobile Furniture, and several Hudson Capital employees walked through the store with Clarke when Hudson Capital was considering whether to purchase the bank’s interest in TSR Imports. The chief operating officer of Hudson Capital, Fulton Stokes, testified that during the walk-through he asked Clarke whether any of the merchandise in the store was on consignment and that Clarke responded that it was not. Stokes further testified that he specifically asked Clarke whether any of the rugs in the store were on consignment and that Clarke responded that he previously had had some rugs on consignment but that “the lady” had picked up those rugs the previous evening. Hudson Capital then conducted a search of UCC records for TSR Imports and Old Mobile Furniture to ensure that the inventory was not claimed by someone else because, as Stokes testified, “when you deal with people in distress, you never know if they’re telling the truth.” In an affidavit, an attorney with the law firm that conducted the UCC search represented that the firm found no filings by or on behalf of Esfahani and/or Woven Treasures naming TSR Imports or Old Mobile Furniture as a debtor. In *910 deed, it is undisputed that the plaintiffs never filed any financing statements related to the-consigned rugs.
In August 2005, Hudson Capital commenced the liquidation sale at Old Mobile Furniture. Esfahani testified that she saw an advertisement for the sale in the Mobile Press-Register and thought, “[w]hat’s going on, where [are] my rugs?” Esfahani then went to Old Mobile Furniture in an attempt to speak with Clarke. Esfahani testified that, when she went to the store, she spoke with Angelo Nichols, an employee of Hudson Capital. Esfahani described her conversation with Nichols as follows:
“I went up there and I said, I want to see [Clarke]. And [Nichols] said ... he’s not here or he’s no longer here or something like that. And there was some lady cleaning the floor, and I think she said, he’s not here anymore. And I said, I need to ... I think I said I want to see [Clarke], my rugs are here. And [Nichols] said something like, oh, those rugs are gone, something like that.”
Esfahani represented that this conversation occurred at some point during the 10-week liquidation sale, but she could not recall the date or month in which the conversation occurred.
After the sale, Hudson Capital perfected its security interest in the merchandise of Old Mobile Furniture and the proceeds arising therefrom by filing a financing statement with the Alabama Secretary of State. The plaintiffs later requested that Hudson Capital tender a sum equal to the fair-market value of the rugs they had originally consigned to Reproduction Galleries. Hudson Capital refused.
In January 2007, the plaintiffs sued Hudson Capital alleging that Hudson Capital improperly possessed and sold consigned rugs in which they maintained an unperfected security interest. As referenced earlier, the plaintiffs asserted claims of conversion, trespass to property, unjust enrichment, negligence, and wantonness.
Hudson Capital subsequently moved for a summary judgment based upon the following arguments: (1) that the plaintiffs cannot establish that Hudson Capital took possession of the consigned rugs; (ii) that Hudson Capital properly obtained and perfected a security interest in the rugs; and (iii) that Hudson Capital obtained title to the rugs as a good-faith purchaser for value. Hudson Capital later filed a “supplemental motion for summary judgment” asserting that the plaintiffs’ claims against it were barred under the doctrine of judicial estoppel because Esfahani had obtained a default judgment against Clarke in a breach-of-contract action related to the consigned rugs.
Hudson Capital also moved to strike certain deposition testimony of Esfahani the plaintiffs had submitted in response to its summary-judgment motion. Specifically, Hudson Capital argued that Esfahani’s testimony that an inventory of the consigned rugs was taken regularly at Reproduction Galleries and Old Mobile Furniture was inadmissible hearsay because Esfahani did not observe the taking of any inventories. The disputed deposition testimony states:
“Q: Okay. When you moved — or when Mr. Clarke moved your rugs to the new location at Old Mobile Furniture you said there was an inventory of your rugs conducted?
“A: Uh-huh, yes.
“Q: Who conducted that inventory?
“A: I don’t remember who was my employee, but I remember I sent few times someone from my shop over there.
“Q: Did you conduct inventory over [at Old Mobile Furniture] at all?
“A: I did not.
*911 “Q: Okay. You did not. You did not personally go and conduct inventory?
“A: No.”
In an order without a written opinion, the trial court granted the initial summary-judgment motion, the supplemental summary-judgment motion, and the motion to strike. Consequently, the trial court entered a summary judgment in favor of Hudson Capital as to all the plaintiffs’ claims. The plaintiffs now appeal.

Standard of Review

In reviewing a ruling on the admissibility of evidence, such as deposition testimony, the standard is whether the trial court exceeded its discretion in excluding the evidence. In Bowers v. Wal-Mart Stores, Inc., 827 So.2d 63, 71 (Ala.2001), this Court stated: “When evidentia-ry rulings of the trial court are reviewed on appeal, ‘rulings on the admissibility of evidence are within the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of that discretion.’ ” (Quoting Bama’s Best Party Sales, Inc. v. Tupperware, U.S., Inc., 723 So.2d 29, 32 (Ala.1998).)
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12.”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).

Discussion

A threshold issue in this case is whether the plaintiffs produced substantial evidence indicating that the consigned rugs were among the merchandise possessed and sold by Hudson Capital. The plaintiffs produced scant documentary evidence indicating that the consigned rugs were ever among the merchandise at Old Mobile Furniture, but they have produced deposition testimony in which several individuals stated that they saw oriental rugs at the store during the liquidation sale or several weeks before the sale. Specifically, the plaintiffs submitted deposition testimony from Esfahani in which she stated that she went to Old Mobile Furniture several weeks or months before the sale and that the store was closed but that “[I] could see my rugs from the distance that I could see from the window or door.” The plaintiffs also produced deposition testimony from Angelo Nichols, a Hudson Capital employee, in which he stated that at the time Hudson Capital inventoried the merchandise at Old Mobile Furniture, “[t]here [were] oriental rugs throughout the store.” Another employee of Hudson Capital, Jo Swingle, testified that she “saw rugs on the floor” of Old Mobile Furniture, particularly a very large rug, which, as described by Swingle, resembled a rug Esfa-hani testified that Woven Treasures had consigned to Reproduction Galleries.
*912 The plaintiffs also contend that Esfaha-ni’s testimony that employees of Woven Treasures inventoried the consigned rugs at Old Mobile Furniture indicates that the rugs were among the merchandise possessed and sold by Hudson Capital. This testimony was stricken by the trial court as inadmissible hearsay, and the plaintiffs appeal that decision. We conclude that regardless of whether Esfahani’s testimony concerning the inventories is inadmissible hearsay, when the other evidence is viewed in a light most favorable to the plaintiffs, the plaintiffs have produced sufficient evidence to create a genuine issue of material fact as to whether the rags were among the merchandise Hudson Capital possessed and sold. Accordingly, we need not decide whether the trial court exceeded its discretion in excluding Esfa-hani’s testimony.
Assuming that the rugs were among the merchandise Hudson Capital possessed and sold, the issue then becomes whether Hudson Capital wrongfully converted the rugs to its possession. Although the plaintiffs present numerous arguments as to why Hudson Capital lacks rights to and title to the rugs and, therefore, why the trial court erred in entering a summary judgment in favor of Hudson Capital, these arguments consist of two primary contentions: (1) that Hudson Capital did not acquire a security interest in the rags; and (2) that Hudson Capital did not acquire title to the rags as a good-faith purchaser for value.
In response, Hudson Capital argues that the trial court did not err in entering a summary judgment in its favor because, it contends, its perfected security interest in the consigned rugs is senior to the plaintiffs’ unperfected security interest.[3] We agree. Stated another way, TSR Imports granted Hudson Capital a security interest in all the merchandise displayed at Old Mobile Furniture (including the consigned rugs), and Hudson Capital perfected this interest, while the plaintiffs never filed a financing statement asserting their interest in the rugs.
In analyzing whether Hudson Capital obtained a security interest in the rugs, we begin by examining TSR Imports’ ability to grant a security interest in the consigned rugs. As referenced in the facts, TSR Imports displayed the rugs at the Old Mobile Furniture store on a consignment basis. Consequently, TSR Imports was a consignee as to the rugs. As a consignee of the rugs, TSR Imports obtained the rights and the title to the rugs identical to those of the plaintiffs under § 7-9A-S19, Ala.Code 1975. Section 7-9A-319(a) provides as follows:
“(a) Consignee has consignor’s rights. Except as otherwise provided in subsection (b),[4] for purposes of determining the rights of creditors of, and purchasers for value of goods from, a consignee, while the goods are in the possession of the consignee, the consignee is deemed to have rights and title to the goods identical to those the consignor had or had power to transfer.”
The Official Comment to § 7-9A-319 notes that “[a]s a consequence of this section, *913 creditors of the consignee can acquire judicial liens and security interests in the goods.” Thus, Hudson Capital, as a creditor of TSR Imports — by way of Compass Bank — acquired a security interest in the consigned rugs under the security agreement it had entered into with TSR Imports.
The following example from the Official Comment of § 7-9A-319 explains the operation of the statute and closely corresponds to the facts of this case:
“Example 1: SP-1 delivers goods to Debtor in a transaction constituting a ‘consignment’ as defined in Section 9-102. SP-1 does not file a financing statement. Debtor then grants a security interest in the goods to SP-2. SP-2 files a proper financing statement. Assuming Debtor is a mere bailee, as in a ‘true’ consignment, Debtor would not have any rights in the collateral (beyond those of a bailee) so as to permit SP-2’s security interest to attach to any greater rights. Nevertheless, under this section, for purposes of determining the rights of Debtor’s creditors. Debtor is deemed to acquire SP-l’s rights. Accordingly, SP-2’s security interest attaches, is perfected by the filing, and, under Section 9-322, is senior to SP-l’s interest.”
Here, “SP-1” is the plaintiffs, the “Debt- or” is Reproduction Galleries/TSR Imports, and “SP-2” is Hudson Capital. Following the example, the plaintiffs executed a consignment agreement with Reproduction Galleries. Reproduction Galleries then went out of business, and Esfahani permitted the rugs that had been consigned to Reproduction Galleries to be moved to Old Mobile Furniture in a transaction constituting another consignment.[5]
Continuing with the example, the plaintiffs never filed a financing statement relating to the consigned rugs. TSR Imports then granted Hudson Capital a security interest in and to “(i) all of the Merchandise located in the Store; (ii) all Proceeds; and (iii) all proceeds arising therefrom.” Hudson Capital then filed a proper financing statement as to its interest in the merchandise of Old Mobile Furniture and the proceeds arising from the sale of that merchandise. Following the language of the example, “[accordingly, [Hudson Capital’s] security interest attaches, is perfected by the filing, and, under Section 9-322, is senior to [the plaintiffs’] interest.” § 7-9A-319 Off. Cmt. See also § 7-9A-322(a)(2) (“A perfected security interest ... has priority over a conflicting unperfected security interest....”). Thus, Hudson Capital, as a purchaser for value of goods from a consignee, did not possess and sell the rugs in violation of the plaintiffs’ rights to the rugs.
The plaintiffs make several arguments as to why the example from § 7-9A-319 does not apply to the facts of this case. First, the plaintiffs argue that TSR Imports never was a consignee of the rugs and that, therefore, TSR Imports never *914 obtained any rights in the rugs that under § 7-9A-319 it could transfer to Hudson Capital. This argument is premised on the plaintiffs’ contention that the rugs were consigned only to Clarke individually and that this consignment never expired.[6] This contention is unsupported by the evidence because the consignment agreement clearly states that “[t]his agreement is made and entered into effective as of this the 15[th] day of January, 2001 by and between Woven Treasures and Reproduction Galleries, Inc.,” and Clarke signed the agreement only “as representing Reproduction Galleries, Inc.” Additionally, none of the consignment slips listed Clarke as the consignee, whereas at least one slip listed “Reproduction Galleries/OM Mobile Furniture ” as the consignee. (Emphasis added.)
Even apart from the fact that one of the consignment slips listed Old Mobile Furniture as a consignee, we find that a consignment between the plaintiffs and TSR Imports (d/b/a Old Mobile Furniture) arose when the plaintiffs permitted Clarke to move the rugs from Reproduction Galleries to Old Mobile Furniture and to display the rugs at that store on a consignment basis. Under Alabama law, a “consignee” is “a merchant to which goods are delivered in a consignment,” § 7-9A-102(a)(19), AIa.Code 1975, and there is no requirement that a consignment be in writing; the term “consignment” is defined in § 7-9A-102(a)(20), AIa.Code 1975, as “a transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale.... ” (Emphasis added.) See also Black’s Law Dictiona'ry 327 (8th ed.2004) (defining “consignee” as “[o]ne to whom goods are consigned,” and “consign” as “[t]o transfer to another’s custody or charge”); 35 C.J.S. Factors § 1 (“A ‘consignment’ exists where a consignor leaves his or her property with a consignee who is substantially engaged in selling the goods of others, and will work to sell the goods on behalf of the consignor.”).
Here, the plaintiffs in their attempt to establish that Hudson Capital had possession of their rugs likewise established that their rugs were delivered to Old Mobile Furniture for the purpose of sale. Thus, we conclude that a consignment between the plaintiffs and TSR Imports arose. TSR Imports had the ability to transfer to Hudson Capital under § 7-9A-319 rights and title to the rugs identical to those of the plaintiffs.
The plaintiffs also contend that the example from § 7-9A-319 is inapplicable to the present case by arguing that the example states that “SP-1 delivers goods to Debtor,” and in this case they did not actually “deliver” the rugs to Old Mobile Furniture because Clarke moved the rugs. We find this argument to be without merit. First, the actual text of § 7-9A-319 does not use the term “deliver”; rather, it merely refers to a situation in which “the goods are in the possession of the consignee.” Such a situation exists here. Second, the term “delivery” is defined in § 7-1-201(15), “General Definitions,” as “voluntary transfer of possession.” Here, it is undisputed that the plaintiffs voluntarily transferred possession of the rugs to Old Mobile Furniture.
*915 Finally, the plaintiffs contend that the example from § 7-9A-319 is inapplicable because TSR Imports did not own the rugs, and, therefore, they say, TSR Imports did not grant Hudson Capital a security interest in the rugs. This argument is based on the express terms of the security agreement, which state that TSR Imports grants a security interest in and to “all of the Merchandise located in the Store” and then define “Merchandise” as “all of Merchant’s owned retail inventory located at the Store on the Sale Commencement Date-” (Emphasis added.) In short, the plaintiffs argue that the security agreement does not cover the consigned rugs because TSR Imports did not own the rugs.
We find this argument unpersuasive because TSR Imports, as a consignee of the rugs, is “deemed to have rights and title to the goods identical to those the consignor had” for purposes of determining the rights of purchasers for value of goods such as Hudson Capital. § 7-9A-319(a) (emphasis added). In addition, the term “owned” is not defined in the security agreement, but the term “own” is defined in Black’s Law Dictionary as “[t]o rightfully have or possess as property; to have legal title to.” Black’s Law Dictionary 1137 (8th ed.2004). Here, TSR Imports rightfully possessed the rugs as a consignee, and it was deemed to have title to the rugs identical to that of Woven Treasures, the consignor. See § 7-9A-319(a). We conclude that TSR Imports granted Hudson Capital a security interest in the consigned rugs.
The plaintiffs further argue that if Hudson Capital is found to have a security interest in the rugs, its interest is inferior to their unperfected security interest because Hudson Capital perfected its interest in the rugs after the liquidation sale had ended and some of or all the rugs had been sold. Specifically, the plaintiffs contend:
“Since Hudson’s putative security interest in the Carpets (the original putative collateral) was unperfected at all times through the Sale, and vanished upon purchase by consumers of each Carpet during the Sale pursuant to § 7-9A-320(a)[7] ... Hudson cannot perfect a, or obtain a perfected, security interest in the ‘proceeds’ after the Carpets had previously been sold during the Sale.”
Plaintiffs’ brief, at p. 70. This argument is without merit because Hudson Capital’s security interest in the rugs attached before the sale began and continued after the rugs had been disposed of. Section 7-9A-315(a), Ala.Code 1975, clearly provides that “(1) a security interest ... continues in collateral notwithstanding sale ... or other disposition thereof ... and (2) a security interest attaches to any identifiable proceeds of collateral.” The plaintiffs’ reliance on § 7-9A-320(a) to argue that Hudson Capital’s security interest in the merchandise “vanished upon purchase by consumers” is misguided because § 7-9A-320 states only that a buyer in the ordinary course of business takes free of a seller’s security interest in the goods, not that the seller’s security interest vanishes. Accordingly, when Hudson Capital perfected its security interest in the rugs, it also perfected its security interest in any proceeds from the sale of the rugs, and the fact remains that the plaintiffs never filed a financing statement reflecting their security interest in the rugs.
Based on the foregoing, the plaintiffs’ claims of conversion, trespass to property, *916 unjust enrichment, negligence, and wantonness must all fail because Hudson Capital has a superior security interest in the consigned rugs. Accordingly, the trial court did not err in entering a summary judgment in favor of Hudson Capital as to all the plaintiffs’ claims.[8]

Conclusion

We affirm the trial court’s summary judgment in favor of Hudson Capital.
AFFIRMED.
COBB, C.J., and WOODALL, PARKER, and SHAW, JJ., concur.

. Clarke was the sole owner of TSR Imports, doing business as Old Mobile Furniture, and before opening Old Mobile Furniture, Clarke had owned another furniture store, Reproduction Galleries. The record does not indicate that TSR Imports and Reproduction Galleries, Inc., were related. The amended complaint asserts that "Woven Treasures and/or Esfaha-ni had consigned to Rick Clarke ('Clarke') doing business as Reproduction Galleries and/or Reproduction Galleries, Inc .... a number of oriental carpets with a total fair market value of $89,470.00.”

. During a deposition, Esfahani was asked "from your perspective [display of the consigned rugs at Old Mobile Furniture] was just a continuation of the document that you had signed with Reproduction Galleries?” To which Esfahani responded, "Yes, uh-huh.” Later in a deposition, however, Esfahani testified that "I personally consigned rugs to Rick Clarke.” Counsel for Hudson Capital then asked, "Well, the contract states that you consigned them to Reproduction Galleries; correct?” To which Esfahani responded, "Yes.”

. Under § 7-9A-103(d), Ala.Code 1975, a consignor has a purchase-money security interest in the goods that are the subject of a consignment.

. Section 7-9A-319(b) provides as follows:
"(b) Applicability of other law. For purposes of determining the rights of a creditor of a consignee, law other than this article determines the rights and title of a consignee while goods are in the consignee's possession if, under this part, a perfected security interest held by the consignor would have priority over the rights of the creditor.”

. The term "consignment” is defined in § 7-9A-102(a)(20), Ala.Code 1975, as
"a transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale and:
"(A) the merchant:
"(i) deals in goods of that kind under a name other than the name of the person making delivery;
“(ii) is not an auctioneer; and
"(iii) is not generally known by its creditors to be substantially engaged in selling the goods of others;
"(B) with respect to each delivery, the aggregate value of the goods is $1,000 or more at the time of delivery;
"(C) the goods are not consumer goods immediately before delivery; and
"(D) the transaction does not create a security interest that secures an obligation.”

. The plaintiffs, in their reply brief, assert that Hudson Capital has "admitt[ed] that [the plaintiffs] consigned the Carpets only to Rick Clarke,” and they support this assertion with a citation to page one of Hudson Capital's brief. See plaintiffs’ reply brief, at p. 1. The plaintiffs’ assertion is without merit. Page one of Hudson Capital’s brief merely states that "Esfahani 'as representative for Woven Treasures’ entered into an agreement with Rick Clarke 'as representative for Reproduction Galleries, Inc.’ for the consignment of rugs, the description of which is set out in a different set of documents.” Hudson Capital’s brief, at p. I.

. Section 7-9A-320(a) provides, in pertinent part: "[A] buyer in ordinary course of business ... takes free of a security interest created by the buyer’s seller, even if the security interest is perfected and the buyer knows of its existence.”

. We pretermit discussion of whether Hudson Capital constituted a good-faith purchaser of the rugs under § 7-2-403, Ala.Code 1975, because we conclude that Hudson Capital had a superior security interest in the rugs. Additionally, Hudson Capital does not respond to the plaintiffs' arguments that the trial court erred in granting Hudson Capital’s supplemental summary-judgment motion, in which it argued that the plaintiffs’ claims were barred by the doctrine of judicial estoppel. This Court need not review the order of the trial court insofar as it granted the supplemental summary-judgment motion because we affirm the trial court’s initial summary judgment and its dismissal of all the plaintiffs’ claims with prejudice.