THOMAS, Judge.
L.M. (“the mother”) appeals from a judgment of the Calhoun Circuit Court (“the trial court”) in favor of K.A. (“the father”). The record reveals the following pertinent facts. The parties are the parents of Ke.A. (“the child”), a child born on December 17, 2007, in Calhoun County. The parties were never married; however, they lived together in Calhoun County after the child was born until approximately May 2008. The mother and the child remained in Calhoun County until June or July 2009; the mother and the child then moved to Kentucky to live with the child’s maternal grandparents (“the grandparents”) and have subsequently moved with the grandparents several times.[1]
*1176 As a result of a petition that the mother filed in the trial court in April 2009, the trial court entered a judgment on July 28, 2009, ordering the father to pay the mother $495 in monthly child support.[2] On March 21, 2011, the father filed a petition seeking a judgment declaring that he had overpaid child support, finding the mother in contempt, terminating his child-support obligation, and awarding him visitation. In his petition, the father alleged that he had discovered that the grandparents had been appointed as limited guardians of the child by the District Court of Christian County, Kentucky (“the Kentucky court”), on July 14, 2008, before the mother had filed her 2009 petition in the trial court seeking an award of child support.[3]
The trial court held a trial on October 25, 2013, at which it heard evidence ore tenus. At the trial, the grandparents’ petition for and the Kentucky court’s order granting the limited guardianship were entered into evidence. The grandparents’ petition stated that the “parents have decided to give guardianship to [the grandparents] until they are able to care for the child.” The mother entered into evidence a letter that was allegedly signed by the father, which stated that the father had consented to the limited guardianship. However, the father testified that he had had no knowledge of the grandparents’ petition, that he had not consented to the limited guardianship, and that he had not signed the letter purportedly giving his consent. At the trial court’s instruction, the father submitted a sample of his handwritten signature into evidence; the trial court noted from the bench that the father’s signature did not appear to match the signature on the letter purporting to give his consent.
The mother testified that the maternal grandfather was an active member of the United States Army and that the purpose of the limited guardianship was, according to the mother, to allow the child to be placed on the maternal grandfather’s “orders.” Specifically, the limited guardianship enabled the child to receive military-dependent benefits such as health insurance, travel expenses, and attendance at the elementary school located on the military installation to which the maternal grandfather was assigned. The mother maintained that she had not relinquished custody of the child, regardless of her consent to the grandparents’ limited guardianship.
On June 24, 2014, the trial court entered a judgment awarding the father visitation, terminating the father’s child-support obligation,[4] ordering the mother to repay the father the $18,315 he had paid to her as child support, allowing the father to claim the child for income-tax purposes in even-numbered years, and ordering the mother *1177 to pay $500 toward the father’s attorney fees.
The mother filed a postjudgment motion on July 8, 2014; the parties filed a joint motion on July 18, 2014, agreeing to extend the time for the trial court to enter a postjudgment order by 80 days — i.e., extending the period from July 22, 2014, to August 21, 2014. See Rule 1, Ala. R. Juv. P.;[5] see also Rule 59.1, Ala. R. Civ. P. The trial court held a hearing on August 15, 2014; however, the record does not indicate that the trial court rendered or entered a subsequent order. Therefore, the mother’s postjudgment motion was denied by operation of law on August 21, 2014, pursuant to Rule 59.1, Ala. R. Civ. P. The mother filed a notice of appeal to this court on September 4, 2014.
The mother raises the following four issues in her brief on appeal: (1) whether the trial court erroneously retroactively modified child-support payments that were final judgments as of the date they were due, (2) whether the trial court erred by concluding that the grandparents’ limited guardianship was equivalent to custody, (3) whether the visitation schedule established in the judgment exceeded the trial court’s discretion, and (4) whether the trial court erred by ordering the mother to pay $500 toward the father’s attorney fees.
The mother first argues that the trial court committed reversible error by awarding the father repayment of the child support that he had paid because, she argues, such an award amounted to a retroactive modification of child-support payments that had already matured. The mother correctly states the legal principle that
“it is well settled that child-support payments that mature or become due before the filing of a petition to modify are not modifiable. Ex parte State ex rel. Lamon, 702 So.2d 449 (Ala.1997). A child-support obligation may be modified only as to installments that accrue after the filing of a petition to modify the child-support obligation. Rule 32(A)(3)(a), Ala. R. Jud. Admin. See also Woods v. Woods, 851 So.2d [541,] 547-48 [ (Ala.Civ.App.2002) ]; Stinson v. Stinson, 729 So.2d 864 (Ala.Civ.App.1998) (affirming a judgment terminating a noncustodial parent’s obligation to pay child support as of the date of the filing of the petition to modify, where the child reached the age of majority approximately 10 months before the noncustodial parent filed his petition to modify).”
Hartley v. Hartley, 42 So.3d 743, 745 (Ala. Civ.App.2009).
However, a review of the father’s petition initiating this action[6] reveals that the father was not seeking a modification of child support; rather, the father alleged that the mother had been awarded child support based upon misrepresentations she had made to the trial court. Rule 60(b), Ala. R. Civ. P., states, in part, that
“the court may relieve a party or a party’s legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) *1178 newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)[, Ala. R. Civ. P.]; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.”
We note that Rule 60(b) requires that relief sought pursuant to Rule 60(b)(1), (2), or (3) must be requested “not more than four (4) months” after the underlying judgment was entered. However, Rule 60(b) also states:
“This rule does not limit the power of the court to entertain an independent action within a reasonable time and not to exeeed three (3) years after the entry of the judgment (or such additional time as is given by § 6-2-3 [governing the statute of limitations in actions seeking relief on the ground of fraud] and § 6-2-8, Code of Alabama 1975), to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court.”
The record indicates that the father’s petition was filed within three years of the entry of the trial court’s judgment ordering him to pay child support and that the petition was assigned a .01 designation, indicating that the father’s petition initiated an independent action (see supra note 5); therefore, the father complied with Rule 60(b).
This court has previously allowed a mother exercising physical custody of a child to continue to receive child-support payments from the father despite the fact that the maternal grandparents had been granted legal custody. See Eastep v. Mitchell, 598 So.2d 987 (Ala.Civ.App.1992). In Eastep, a 1983 divorce judgment had awarded the mother in that case primary physical custody of the parties’ child and ordered the father to pay child support. 598 So.2d at 987. In 1990, the mother filed a petition seeking to establish and recover a child-support arrearage. Id. The trial court held the father in contempt, calculated the child-support arrearage, and ordered the father to pay the arrearage in addition to upwardly modifying the monthly child-support obligation the father was required to pay. Id.
On appeal to this court, the father argued that, because the maternal grandparents had been awarded legal custody of the child in 1986, the trial court had erred in ordering him to pay any child support to the mother; this court noted that the father had failed to cite any legal authority in support of his argument. Id. at 988. However, this court also observed that the father had unilaterally ceased paying child support that he had been ordered to pay without a judgment permitting him to do so. Id. This court ultimately affirmed the trial court’s judgment based upon the “specific fact situation,” which included the father’s failure to request a modification from the trial court. Id.
In the present case, it is undisputed that the mother failed to inform the trial court in her 2009 action for child support that the grandparents were the guardians of the child and that the child was receiving military-dependent benefits through the maternal grandfather as a result. Unlike the mother in Eastep, the mother in the case before us was not the legal custodian of the child when the trial court entered the judgment ordering the father to pay child support. See discussion, infra. Fur *1179 thermore, in its judgment terminating child support, the trial court specifically found that the mother had been “less than candid with this Court when the original petition for paternity and child support was filed on her behalf by the Department of Human Resources (‘DHR’).” The trial court further stated that the mother “had a duty at the time of filing by DHR to notify both DHR and the Court that her parents (1) had filed a Petition for Guardianship in the State of Kentucky and (2) had received an order of Guardianship about a year before .the original Paternity case was filed in Calhoun County, Alabama.” The trial court further found that the father had not been given notice of the grandparents’ limited guardianship even though the grandparents’ petition had “erroneously” stated that the father had consented to the limited guardianship.
The mother argues in her reply brief that the father sought repayment of past-due child support — that is factually incorrect. The record indicates that the father had consistently paid the monthly child support to the mother.
“The [trial] court’s authority to set aside a judgment obtained through fraud and to provide the appropriate equitable remedy is settled. Maddox v. Hunt, 281 Ala. 335, 202 So.2d 543 (1967); Battle v. Morris, 265 Ala. 581, 93 So.2d 428 (1957). Moreover, the court has the authority to require restitution of moneys paid under a judgment that is later reversed. Ex parte Robertson, 235 Ala. 184, 177 So. 902 (1937); Carter v. Mitchell, 225 Ala. 287, 142 So. 514 (1932).”
Cauthen v. Yates, 716 So.2d 1256, 1262 (Ala.Civ.App.1998). Therefore, we conclude that the trial court did not err to reversal when it acted within its authority to terminate the father’s child-support obligation and to order the mother to repay the money that she had received.
The mother next argues that the trial court erred when it determined that the grandparents’ limited guardianship awarded them custody of the child. In support of her argument, the mother cites to Kentucky and Alabama caselaw; however, the cases cited by the mother are not relevant to the facts of the present case. For example, in Hicks v. Halsey, 402 S.W.3d 79, 80 (Ky.Ct.App.2013), the mother in that case abandoned the child with an aunt. The aunt initially petitioned for guardianship of the child but later filed a petition seeking de facto custodian status and custody of the child. 402 S.W.3d at 80. The Kentucky Court of Appeals differentiated between the legal status of a guardian and a custodian merely to determine that the mother’s motion to set aside the aunt’s guardianship served to initiate a legal proceeding to regain custody of the child. Id. at 83. In fact, the Kentucky appellate court affirmed the lower court’s judgment determining that the aunt had met the statutory requirements of a de facto■ custodian,[7] which placed the aunt on equal footing with the mother in a custody dispute. Id. The Hicks court reiterated *1180 that the mother was required to file a petition seeking to terminate the aunt’s guardianship before she could resume custody of the child; we, therefore, fail to understand how Hicks is supportive of the argument raised in the present case.
The mother cites Lawrence v. Cannon, 998 So.2d 1070 (Ala.Civ.App.2008), for the proposition that a parent has a superior right to custody of a child. However, Lawrence involved a nonparent seeking to divest a custodial parent of custody against the parent’s wishes. The mother in the present case consented to the grandparents’ guardianship of the child. The mother also cites M.D.K v. V.M., 647 So.2d 764 (Ala.Civ.App.1994), in which this court reiterated that a parent who seeks help from a child’s grandparents does not necessarily voluntarily relinquish the right to custody of the child once that parent has become able to care for the child. Again, M.D.K. is distinguishable from the present case. The case before us does not involve the grandparents, or any other party, attempting to divest the mother of her right to resume custody of the child when she is able to do so. However, the record is clear that she had consented to the grandparents’ guardianship and that she had not taken steps to terminate the guardianship at the time of the trial.
The grandparents sought the limited guardianship by completing a “Petition for Appointment of Guardian/Conservator for Minor,” which is an official form of the Kentucky court system. On the form, a limited guardianship is defined as an “individual, agency, or corporation having care, custody, and control of [a] minor.... ” The grandparents also indicated on the form that the parents were consenting to the limited guardianship until they were “able to care for the child.” Additionally, Ky. Rev.Stat. Ann. § 387.065(1), the Kentucky statute defining a guardian’s powers, duties, and responsibilities, clearly states that “[a] guardian of a ward shall have the powers and responsibilities of a parent regarding the ward’s support, care, and education....” Furthermore, Ky.Rev.Stat. Ann. § 387.065(2)(a) provides that “a guardian shall ... [t]ake custody of the person of the ward and establish the ward’s place of abode within the Commonwealth.”
The record clearly indicates that the child is receiving military benefits reserved for dependents, such as health insurance. The child has lived and moved with the grandparents consistently since 2009. The mother testified that she and the child moved to live with the grandparents in Kentucky in July 2009 and that they moved with the grandparents to Hawaii shortly thereafter. The mother testified that she and the child moved to Georgia sometime in 2011 but that they resumed living with the grandparents in Colorado in July 2012; the mother and the child continued to reside with the grandparents in Colorado at the time of the trial. Although it appears from the mother’s testimony that she may not have appreciated the legal consequences of consenting to the limited guardianship, it remains that the child was under the care, custody, and control of the grandparents at the time the father was ordered to pay child support to the mother. We find no basis for the mother’s argument that the guardianship did not place the child in the custody of the grandparents.
The mother also argues that the visitation schedule ordered by the trial court created a substantial hardship and was not in the best interest of the child. The trial court’s judgment, in pertinent part, established two visitation schedules dependent on the distance between the parties’ residences. The judgment established that, if the parties lived within 150 miles of one *1181 another, the father was to exercise visitation on the first, third, and fifth weekend of each month, along with visitation for holidays and summer vacation. However, the judgment also stated that, if the parties lived more than 150 miles apart, the father would exercise visitation on the first and third weekends of each month, and it set out a modified holiday and summer visitation schedule.
‘“Visitation, like custody, is a matter that rests soundly within the broad discretion of the trial court, and its determination regarding visitation must be affirmed absent a finding that the judgment is not supported by any credible evidence, and that the judgment, therefore, is plainly and palpably wrong.’ Cohn v. Cohn, 658 So.2d 479, 482 (Ala. Civ.App.1994). Visitation is determined on a case-by-case basis, and the trial court, in ruling on visitation, is guided by the children’s best interests. Id.”
Carr v. Howard, 777 So.2d 738, 741-42 (Ala.Civ.App.2000).
At the time of the trial the mother and the child lived in Colorado. Although the father asserts in his brief to this court that the mother stated off the record that she planned to move with the child back to Georgia, “ ‘[ejvidence or assertions of fact contained in the briefs of the parties, but not included in the record presented on appeal, may not be considered by this court.’ ” Fuller v. Fuller, 51 So.3d 1053, 1057 (Ala.Civ.App.2010)(quoting Palmer v. Bentley, 634 So.2d 559, 560 (Ala.Civ.App. 1994)). Therefore, we must presume that the child will continue to reside in Colorado. Additionally, the father testified at the trial that the child lived in Colorado and that he preferred that the visitation take place during the summer to prevent the child from constantly flying back and forth for weekend visitation.
In Carr, supra, this court reversed the trial court’s judgment requiring the children to fly from Chicago to Baldwin County every other weekend. In so holding, this court stated that
“the current visitation schedule, requiring either the two daughters or the two sons to travel every other weekend from Chicago to Baldwin County or from Baldwin County to Chicago, respectively, is disruptive to the family unit, creates problems in family stability, and, ultimately, is not in the best interests of the children. The frequency and length of the travel required, in our opinion, must be a factor in the consideration of what serves the children’s best interests. We do not believe the best interests of the children are served by having them spend every other weekend fighting the crowds at O’Hare International Airport.”
Carr, 777 So.2d at 742.
Likewise, we cannot conclude that the judgment in the present case requiring the child, who is now seven years old, to fly alone at least twice a month from Colorado to Alabama serves the best interests of the child. We, therefore, hold that the trial court exceeded its discretion in its award of visitation and conclude that it should have fashioned an equitable visitation schedule that is less disruptive for the child.
Finally, the mother argues that the trial court abused its discretion by awarding the father $500 in attorney fees.
“ ‘Attorney’s fees are ordinarily available in child support modification proceedings with the trial court having a discretion to exercise regarding the award and amount of such a fee.’ Taylor v. Taylor, 486 So.2d 1294, 1297 (Ala.Civ.App.1986).
*1182 “ ‘Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala.Civ.App.1994). “Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the. value of the services performed by the attorney.” Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1998). Additionally, a trial court is presumed to have knowledge from which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee. Taylor v. Taylor, 486 So.2d 1294 (Ala. Civ.App.1986).’
“Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996).”
Robbins v. Payne, 84 So.3d 136, 139-MO (Ala.Civ.App.2011).
The mother argues that the father failed to offer evidence regarding his financial position or the amount of fees he was obligated to pay his attorney. Other than a citation to the factors a trial court is tasked to consider when awarding an attorney fee, the mother does not favor this court with applicable law in support of this argument. In Broadway v. Broadway, [Ms. 2121037, Sept. 26, 2014] - So.3d -, - (Ala.Civ.App.2014), this court, relying on Lackey v. Lackey, 18 So.3d 393, 402 (Ala.Civ.App.2009), stated that “[a] trial court may rely on its knowledge and experience in assessing the value of an attorney’s services even without evidence regarding the reasonableness of the attorney fees.”
The trial court specifically found in its judgment that the mother had been “less than candid” with that court. Furthermore, the father’s petition to terminate child support and to seek restitution was based entirely on the mother’s failure to inform him and the trial court in 2009 that the grandparents were the child’s legal guardians. We hold that the trial court did not exceed its discretion in awarding the father attorney fees.
For the foregoing reasons, we affirm the trial court’s judgment insofar as it, based upon the grandparents’ limited guardianship of the child, terminated the father’s child-support obligation, ordered the mother to repay the child-support payments she had received, and ordered the mother to pay $500 toward the father’s attorney fees. We reverse that part of the judgment establishing a visitation schedule, and we remand this cause for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
DONALDSON, J., concurs in part and dissents in part, with writing.

. It is unclear from the record whether the grandparents previously had lived in Calhoun County before moving to Kentucky and, if so, whether the mother and the child had lived with the grandparents during that time.

. The July 2009 judgment is included in the record on appeal and contains a notation from the trial court indicating that the father had admitted paternity.

. The grandparents were not parties to the mother’s petition for child support.

.The trial court stated in its judgment:
"Pursuant to the Alabama Child Support Guidelines, the [father] should pay the [mother] the sum of $495.00 per month. However, since the maternal grandparents have been given Guardianship (care, custody, and control) of the parties’ minor child, and the [mother] owes the [father] a substantial judgment, this Court will not order the [father] to pay child support, pending further orders of this Court."

. The father's action was assigned case number CS-09-236.01. “[A] case designated with a 'CS' case number is considered a juvenile-court action, whether it is filed in a juvenile court or in a circuit court. See H.J.T. v. State ex ret M.S.M., 34 So.3d 1276, 1278-79 (Ala.Civ.App.2009).” C.W.S. v. C.M.P., 99 So.3d 864, 865 n. 1 (Ala.Civ.App.2012). Therefore, "the Alabama Rules of Juvenile Procedure properly govern this action.” R.P.M. v. P.D.A., 112 So.3d 49, 51 (Ala.Civ.App.2012).

. The mother's action seeking child support in 2009 was assigned case number CS-09-236. The father's petition filed in 2011 was assigned case number CS-09-236.01.

. The applicable Kentucky statute defines a de facto custodian as
“a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who has resided with the person for a period of six (6) months or more if the child is under three (3) years of age and for a period of one (1) year or more if the child is three (3) years of age or older or has been placed by the Department for Community Based Services. Any period of time after a legal proceeding has been commenced by a parent seeking to regain custo-. dy of the child shall not be included in determining whether the child has resided with the person for the required minimum period.”
Ky.Rev.Stat. Ann. § 403.270(l)(a).