THOMAS, Judge.
I.L.C. (“the mother”) and J.D.B. (“the father”) are the unmarried parents of G.I.B. (“the child”), who was born on April 29, 2010, when the mother was a high-school student. In August 2011, in case no. JU-10-238.01 (“the .01 action”), the Geneva Juvenile Court entered a custody order (“the 2011 custody order”) in which it awarded the parents joint custody of the child. The parents exercised alternating weekly custody of the child.. The parents agree that they do not communicate; instead, the child’s maternal grandmother and paternal grandmother assumed active roles in communicating to coordinate custody exchanges. On April 11, 2014, the mother, acting pro se, filed two handwritten complaints in case no. JU-10-238.03 (“the .03 action”). The mother requested a finding of contempt against the father, and she appeared to request a modification of the 2011 custody order to allow custody exchanges to occur on Sundays rather than Saturdays. On May 5, 2014, the mother, then represented by an attorney, filed an amended complaint in the .03 action seeking an award of sole physical custody of the child and an award of child support. The amended complaint did not mention the mother’s contempt claim. On October 28, 2014, the father filed an answer to the mother’s complaint and amended complaint, and he filed a counterclaim seeking an award of sole physical custody of the child and an award of child support.
A custody hearing was-held on January 28, 2015. The juvenile court rendered an order addressing only the issue of custody (“the 2015 custody order”) on April 29, 2015; however, the 2015 custody order was improperly entered in case no. JU-10-238.02 (“the .02 action”), a previous action in which the father had sought a modification of custody. See Gilliam v. Gilliam, *90 43 So.3d 615, 618 (Ala.Civ.App.2010)(ex-plaining that “[t]he rendering and the entering of a judgment are two separate acts” pursuant to Rule 58, Ala. R. Civ. P.). The 2015 custody order was properly entered in the .03 action on May 4, 2015, The mother filed a motion to reconsider the 2015 custody order on May 19, 2015, which the juvenile court denied on June 6, 2015; the mother then filed a notice of appeal directed to the 2015 custody order on June 9, 2015.
The fathér filed a motion to dismiss the appeal as untimely filed in this court in which he argued that, on May 5, 2015, the 2015' custody order was “reissued to correct a clerical error contained in the April 29, 2014[,] final judgment”; however, we conclude that the juvenile court’s action— entering the 2015 custody order in the .03 action — was not a correction of a mere clerical error. “[A]ny error in the entry of the judgment .., was not the kind of mistake ‘associated with mistakes in transcription, alteration,, or omission of any papers and documents.’ ” Pierce v. American Gen. Fin., Inc., 991 So.2d 212, 217 (Ala.2008)(quoting Rule 60(a), Ala. R. Civ. P.).
- Moreover, the 2015 custody order, which did not adjudicate all the issues in the .03 action, was not a final judgment. See Perry v. Perry, 92 So.3d 799, 800 (Ala.Civ.App.2012)(dismissing a wife’s appeal as being from a nonfinal judgment because the trial court had failed to rule on the wife’s contempt motion regarding the husband’s failure to abide by the trial court’s status quo order); Sexton v. Sextan, 42 So.3d 1280, 1282 (Ala.Civ.App.2010)(“A judgment is not final if it fails to completely adjudicate all issues between the parties.”). In this case, the 2015 custody order began with the following stgtement: “The mother of the minor child in this case ... filed a petition to hold the father in contempt”; however, the record did not contain any order disposing of the mother’s contempt claim. Furthermore, the 2015 custody order did not address the parties’ separate requests for an award of child support. Therefore, we concluded that the appeal was taken from a nonfinal judgment.
However, rather than dismissing the appeal, we remanded the cause to the juvenile court for it to address the parents’ child-support claims and to either adjudicate the mother’s contempt claim or to enter,an order directing the entry of a final judgment pursuant to Rule 54(b), Ala. R. Civ. P. See Heaston v. Nabors, 889 So.2d 588 (Ala.Civ.App.2004). On December 19, 2015, the juvenile court entered a judgment (“the 2015 custody judgment”) that resolved the remaining issues; thus, the 2015 custody judgment is a final judgment. Accordingly, the father’s motion to dismiss the appeal as untimely filed is denied.
The 2015 custody judgment awarded the parties joint legal custody of the child; however, it awarded the father sole physical custody, and it awarded the mother visitation. The juvenile court denied the mother’s request for a finding of contempt against the father, and it ordered the mother to pay the father $253 per month in child support,
First, the mother contends that the juvenile court lacked jurisdiction over the action. It is well settled that “subject-matter jurisdiction may not be waived; a court’s lack of subject-matter jurisdiction may be raised at any time by any party and may even be raised by a court ex mero motu.” C.J.L. v. M.W.B., 868 So.2d 451, 453 (Ala.Civ.App.2003).[1] The mother ar *91 gues that because there was no finding of dependency in the: .01 action, in which a dependency petition filed by the child’s maternal grandmother and a paternity petition filed by the father were adjudicated, the juvenile court lacked jurisdiction over the .01 action, .02 action, and the .03 action; however, as the father and the child’s guardian ad litem point out, and the mother does not dispute, the juvenile court exercised jurisdiction in the .03 action pursuant to § 12-15-115(a)(7), Ala.Code 1975, which provides: “A juvenile court shall also exercise original jurisdiction of .,. [proceedings to establish, modify, or enforce support, visitation, of custody when a juvenile court previously has established parentage.” The record contains an order of the juvenile court in the .02 action, dated July 2, 2012, which contains the following language:
“The juvenile Court had authority and subject matter jurisdiction [in the .01 action] to make a custody determination based on the dependency petition [filed by the maternal grandmother] in December 2010 and the subsequent paternity petition [filed by the , father]. The Court established paternity, without considering the issue of dependency or custody, and incident to establishing paternity the Juvenile Court had subject matter jurisdiction to issue a custody order.”
Thus, we conclude that, in the .01 action, the juvenile court’s adjudication of paternity provided a basis for the its jurisdiction and that the juvenile court thereafter retained jurisdiction to enforce or modify its orders. See § 12-15-117(c). Therefore, the juvenile court did not lack jurisdiction over the .03 action, and we proceed to consider the mother’s other issues on appeal under the following standard' of review.
. “Where,, as in the present case, there is a prior judgment awarding joint physical custody, ‘ “the best interests of the child” ’ standard applies in any subsequent custody-modification proceeding. Ex parte Johnson, 673 So.2d 410, 413 (Ala.1994) (quoting Ex parte Couch, 521 So.2d 987, 989 (Ala.1988)). To justify a modification' of a preexisting'judgment awarding custody, the petitioner must demonstrate that there has been a material change of circumstances since that judgment was entered and that£ “it [is] in the [child’s] best interests that the [judgment] be modified” ’ in the manner requested.. Nave v. Nave, 942 So.2d 372, 376 , (Ala.Civ.App.2005) (quoting Means v. Means, 512 So.2d 1386, 1388 (Ala.Civ.App.1987)).”
Ex parte Blackstock, 47 So.3d 801, 804-05 (Ala.2009).
The mother complains that the juvenile court erred in its application of § 30 — 3—162(b), Ala.Code 1975, a part of the Alabama Parent-Child Relationship Protection Act (“the Act”), § 30-3-160 et seq., Ala.Code 1975. Section 30-3-162(b) provides:
“Sections 30-3-169.1 to 30-3-169.7, inclusive, shall not apply to a change of principal residence of a child to a residence which is 60 miles or less from the residence of a non-relocating parent who is entitled to custody of or visitation with the child or if the change or proposed change results in the child residing nearer to the non-relocating parent than before the change or proposed change, unless such change in the principal residence of a child results in the child living in a different state.”
In this case, the mother testified that when the 2011 custody order was entered she *92 lived in Coffee Springs, Alabama. Without providing the father the 45-day notice required under the Act, see § 30-3-165(a), Ala.Code 1975, the mother relocated to Bonifay, Florida, in March 2014. Although, according to the mother, Bonifay is 10 miles closer to Black, Alabama, where the father lives, than is Coffee Springs, the fact remains that the mother relocated her principal residence, where she exercised her custodial rights, to another state.[2] We do not agree with the mother’s assertion that the juvenile court interpreted § 30-3-162(b) as requiring a mandatory change of custody. The 2015 custody judgment indicates that the juvenile court properly considered the mother’s relocation and her failure to give the father notice of her intent to relocate as two of several factors in making its determination regarding what custody arrangement would serve the best interest of the child. See § 30-3-168(a). Therefore, the mother has not demonstrated that the juvenile court erred in its application of § 30-3-162(b).
Next, the mother contends that the evidence presented does not support the 2015 custody judgment. The mother testified that the custody arrangement should be modified because the child needed to be enrolled in kindergarten in either Alabama or Florida. The testimony indicated' that the parents did not cooperate with one another regarding custody exchanges on holidays, that the mother earned slightly more income than the father, that the child had a younger half sibling in each home, and that the parents had each left the child in the care of others during much of their respective custodial periods due to their work schedules. The juvenile court’s judgment reveals that it based its decision to modify custody on the facts that the mother had relocated to Florida and that the child had a stronger support system in Alabama. Although the father testified that most of the child’s maternal and paternal relatives lived in Alabama, Florida, or “right on the Florida/Alabama line,” the juvenile court specifically noted that the child’s maternal and paternal grandparents, with whom the child shared a close relationship, lived in Geneva County. The mother continues her argument by contending that the father’s ownership of seven dogs and the father’s lack of cooperation with the mother regarding their joint-custody arrangement should “tip[ ] the scales” in favor of the mother. However, the mother did not present evidence indicating that the dogs had ever harmed the child, and the father presented evidence indicating that the mother had also displayed a lack of cooperation regarding their joint custody arrangement. Thus, we conclude that despite testimony as to other relevant matters, the evidence presented regarding the child’s familial relationships in Geneva County is sufficient to support the juvenile court’s award of sole physical custody of the child to the father.
Finally, the mother argues that the juvenile court erred by refusing to hear testimony regarding the father’s alleged acts of domestic abuse (see §§ 30-3-131 & 134, Ala.Code 1975,) and marijuana use, which, she said, occurred before the 2011 custody order was entered. After a review of the juvenile court’s evidentiary rulings, we conclude that the juvenile court did not abuse its discretion by refusing to hear such testimony. Any alleged acts of domestic violence or drug abuse that the *93 mother sought to enter into evidence had had no impact on the child because those acts had allegedly occurred before the child was bom and, moreover, before the entry of the 2011 custody order. “When evidentiary rulings of the trial court are reviewed on appeal, ‘rulings on the admissibility of evidence are within the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of that discretion.’” Bowers v. Wal-Mart Stores, Inc., 827 So.2d 63, 71 (Ala.2001)(quoting Bama’s Best Party Sales, Inc. v. Tupperware, U.S., Inc., 723 So.2d 29, 32 (Ala.1998), citing in turn Preferred Risk Mut. Ins. Co. v. Ryan, 589 So.2d 165 (Ala.1991)).
In conclusion, the juvenile court properly exercised jurisdiction over the .03 action, and it did not err in its application of the Act. Sufficient evidence supports the determination that the child’s best interest was served by a modification of custody, and we find no error in the juvenile court’s evidentiary rulings. The 2015 custody judgment is therefore affirmed.
AFFIRMED.
PITTMAN, MOORE, and DONALDSON, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

. ’ Accordingly, the father’s motion to strike the "collateral attack” on the juvenile court's subject-matter jurisdiction is denied.

. In her appellate brief, the mother includes a map purporting to show where Coffee Springs, Bonifay, and Black are in relation to one another; however, the map was not offered into evidence at the trial. Therefore, the father’s motion to strike the map is granted. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (an appellate court's review "is restricted to the evidence ... considered by the trial court").