THOMAS, Judge.
*63 J.S. ("the mother") and L.M. ("the father") are the parents of a child ("the child") who was born in October 2003. The mother and the father were never married to one another; thus, the action between the parents began in the Jefferson Family Court ("the juvenile court") in a proceeding that was assigned case no. CS-04-47 ("the juvenile-court action"). See Ex parte L.N.K., 64 So.3d 656, 657-58 (Ala. Civ. App. 2010) ("[T]he Jefferson Family Court acted as the juvenile court for the Tenth Judicial Circuit."); see also Ex parte T.M., 210 So.3d 614, 615 n.1 (Ala. Civ. App. 2016) ("Although the filings and orders from the court in Calhoun County that are before this court identify the 'Calhoun Circuit Court' as the court in which the alleged father's paternity action was commenced, that action was assigned a 'CS' case number, which indicates that the circuit court was acting as a juvenile court.")
Although no such order appears in the record, the parties agree that on September 9, 2013, the juvenile court awarded the mother sole physical custody of the child subject to the father's visitation with the child on the first and third weekends of each month ("the visitation provision").[1] The dispute giving rise to this appeal began in 2015 when the mother, who had resided in Birmingham, relocated to Texas. Again, although no order regarding the relocation appears in the record, the parties agree that the father filed a motion objecting to the child's relocation, see § 30-3-160 et seq., Ala. Code 1975; that the mother moved to Texas; that the child remained in Alabama for a period in the care of the mother's parents; but that the child relocated to Texas before the juvenile court entered an order on the father's motion.[2] In December 2015 the mother filed in the juvenile court a motion seeking a modification of the custody order containing the visitation provision, the father filed a motion in opposition to the mother's modification petition, and the father filed a motion, as amended, seeking a finding of contempt against the mother and an order designating how the parties would bear the cost of transportation for visitation.
On September 28, 2016, the juvenile court conducted a trial at which the parties testified, and the juvenile-court judge interviewed the child in camera. The juvenile court entered a judgment on September 29, 2016, finding the mother in contempt of the visitation provision, ordering that the visitation provision would remain unchanged despite the child's relocation, making the mother responsible for all costs of transportation for visitation, and ordering the mother to pay the father's attorney fees in the amount of $3,539.98.
The mother filed a timely postjudgment motion and, thereafter, certain amendments to her motion. Her motion was denied by operation of law, and she filed a *64 timely notice of appeal from the juvenile court to the Jefferson Circuit Court ("the circuit court"), seeking a trial de novo, because, she argued, the record was not adequate for review. See Rule 28(B), Ala. R. Juv. P. That appeal was assigned case no. DR-16-602. The father filed a motion seeking an order transferring the mother's appeal to this court. After determining that the record was adequate for review (see discussion, infra ), the circuit court entered an order transferring the mother's timely appeal to this court.
Taking her issues out of order, the mother seeks our review of whether the circuit court abused its discretion by transferring the appeal to this court and of whether the juvenile court erred by admitting certain exhibits into evidence, by concluding that she was in contempt, by ordering her to pay the father's attorney fees, by declining to modify the child's visitation, by requiring her to pay all the costs of transportation for visitation, by concluding that the father had "prove[d] his case," and by not conducting a postjudgment hearing.
Before reaching the merits of the mother's arguments addressed to the propriety of the juvenile court's judgment, we first determine whether the circuit court properly transferred the appeal to this court. Rule 28(B), Ala. R. Juv. P., provides for an appeal from a juvenile court to a circuit court for a trial de novo when the record is inadequate for review by an appellate court. The mother had argued to the circuit court that the record was incomplete, because, she complained: "At the end of the trial in [the juvenile court], the [juvenile] court returned the [mother]'s exhibit, which was offered and introduced and therefore there is no complete record." The circuit court ordered the parties to supplement the record with all the exhibits, and the parties did so. Rule 28(D), Ala. R. Juv. P., provides that a "circuit court may transfer an appeal to another court if it determines that the appeal should be transferred to or should have been brought in that court." The circuit court properly transferred the appeal to this court, and we proceed to consider the merits of the mother's arguments addressed to the propriety of the juvenile court's judgment.
At the time of the trial the child was 12 years old. The mother testified that, in 2015, she notified the father that she intended to relocate to Texas, and the father filed a motion objecting to the child's relocation; however, the mother and the child relocated before the father's motion had been addressed by the juvenile court. There is no dispute that the juvenile court eventually entered an order that allowed the child to relocate and that it did not modify the visitation provision. The father testified that, from December 2015 through September 2016, he had spent $3,240.76 on airline tickets for visitations, in addition to paying $750 per month in child support.
The parties each offered testimony regarding the frequency of visitation. The mother testified that the child was old enough to enjoy weekend activities at home, to refuse to get in the automobile to go to the airport, and to refuse to board an airplane. Specifically, the mother said that the child had not visited the father on the third weekend of May 2016 because the mother had allowed her to participate in a volleyball tournament. According to the father, after he had purchased an airline ticket, the mother had asked him to cancel the visit, and the child had contacted him to inform him that she wanted to participate in the tournament. The father admitted that he had insisted that the child visit instead because, he testified:
*65 "I explained to [the child] that we cannot-I have plane tickets. We can't just switch a weekend, you know, at the last minute. And I think it's more important for us to have-for me to be able to have a relationship and spend time with her than a volleyball tournament."
However, he said that later that week he had relented. He testified:
"So, me and my wife talked about it and we looked at flights to see what could we do. And the very next weekend was Memorial Day weekend. So, I gave [the mother]-I gave her an offer and said, hey, okay, we can switch it. But if I'm going to go to all this trouble and I'm going to switch it, then I want Memorial Day. I will take-we will switch it, but I want the weekend plus Memorial Day for the next weekend. So, yes, we did not want to, but we did offer her to do that."
There is no dispute that the mother refused to switch the visitation weekends, that the child did not visit the father on the third weekend of May 2016, and that the father had subsequently filed his motion seeking a finding of contempt against the mother. The father testified that he had exercised visitation with the child only when he paid the cost of transportation. For example, he said: "I paid for the beginning of September [2016] visit and not the third weekend. So, I did not see her on that weekend."
On appeal, the mother argues that certain e-mail messages and certain text messages ("the exhibits") offered by the father, to which she objected, should not have been admitted into evidence.
" 'When evidentiary rulings of the trial court are reviewed on appeal, "rulings on the admissibility of evidence are within the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of that discretion." ' Bowers v. Wal-Mart Stores, Inc., 827 So.2d 63, 71 (Ala. 2001) (quoting Bama's Best Party Sales, Inc. v. Tupperware, U.S., Inc., 723 So.2d 29, 32 (Ala. 1998), citing in turn Preferred Risk Mut. Ins. Co. v. Ryan, 589 So.2d 165 (Ala. 1991) )."
I.L.C. v. J.D.B., 203 So.3d 88, 93 (Ala. Civ. App. 2016). According to the mother, the exhibits contained inadmissible hearsay, were incomplete, were based on an improper predicate, and lacked a proper foundation.[3] However, even if we concluded that the juvenile court had abused its discretion by admitting the exhibits, the error would be harmless pursuant to Rule 45, Ala. R. App. P., because other evidence presented amply supports the juvenile court's determination that the mother had failed or refused to comply with the visitation provision. The mother herself testified that she had not required the child to visit the father on the third weekend of May 2016. Moreover, nothing in the judge's oral statements or in the judgment indicates that the juvenile court relied on the exhibits. Therefore, the mother has failed to demonstrate that she was harmed by the evidentiary rulings of the juvenile court.
Next, the mother argues that the juvenile court erred by finding her in contempt. The juvenile court did not specify in its judgment the type of contempt in *66 which it found the mother. The judgment reads: "The [mother] is held in contempt for violation of the court ordered visitation. Sentenced to 90 days suspended." The juvenile-court judge indicated that she had relied on the father's testimony that he had been willing to work around the volleyball tournament but that the mother would not compromise. At the close of all the testimony, the juvenile-court judge orally stated that she had concluded that the mother was in contempt because she had not allowed the father to "completely exercise his visitation rights," and the juvenile-court judge said:
"I find [the mother] in contempt of the court order, suspended sentence. And if this happens again, then, of course, she has to come back and serve ninety days. So, I will-I'm sure she will make sure that everything goes as planned from now on."
Rule 70A(a)(2), Ala. R. Civ. P., provides, in pertinent part:
"(C) 'Criminal contempt' means ...
"....
"(ii) Willful disobedience or resistance of any person to a court's lawful writ, subpoena, process, order, rule, or command, where the dominant purpose of the finding of contempt is to punish the contemnor.
"(D) 'Civil contempt' means willful, continuing failure or refusal of any person to comply with a court's lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with."
Criminal contempt imposes punishment for failure to obey a trial court's judgment or order, and a key element of a finding of criminal contempt pursuant to Rule 70A(a)(2)(C)(ii) is that such a finding is intended to "punish the contemnor." Sanctions for criminal contempt are statutorily limited to a maximum fine of $100 and imprisonment not to exceed five days. § 12-11-30(5), Ala. Code 1975. A key element of a finding of civil contempt is that such a finding is intended to compel compliance, and sanctions for civil contempt may exceed the limits provided by § 12-11-30(5) and "may continue indefinitely until the contemnor performs as ordered." Pate v. Guy, 934 So.2d 1070, 1072 (Ala. Civ. App. 2005) ; see also Kalupa v. Kalupa, 527 So.2d 1313, 1317 (Ala. Civ. App. 1988) (citing Charles Mfg. Co. v. United Furniture Workers, 361 So.2d 1033 (Ala. 1978) ).
In this case, the juvenile court indicated that it sought both to punish and to compel compliance. In Norland v. Tanner, 563 So.2d 1055, 1058 (Ala. Civ. App. 1990), we were presented with a similar situation.
"We find that the trial court, in addition to punishment for past disobedience, was attempting to compel compliance with its orders in the future. As such, its contempt findings were both criminal and civil in nature. There is no legal prohibition against the finding of both criminal and civil contempt in an appropriate factual setting."
In Lightsey v. Kensington Mortgage & Finance Corp., 294 Ala. 281, 315 So.2d 431 (1975), our supreme court explained that contempt can have elements of both civil and criminal contempt and be treated as civil contempt.
"One of the most quoted cases on this subject is Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 [ (1911) ], where it was said:
" 'Contempts are neither wholly civil nor altogether criminal. And "it may not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both."
*67 Bessette v. W.B. Conkey Co., 194 U.S. 324, 24 S.Ct. 665, 48 L.Ed. [997 (1904) ]. But in either event, and whether the proceedings be civil or criminal, there must be an allegation that in contempt of court the defendant has disobeyed the order, and a prayer that he be attached and punished therefor. It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. It is true that punishment by imprisonment may be remedial as well as punitive, and many civil contempt proceedings have resulted not only in the imposition of a fine, payable to the complainant, but also in committing the defendant to prison. But imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order.' "
Lightsey, 294 Ala. at 285-86, 315 So.2d at 434-35 ; see also Fludd v. Gibbs, 817 So.2d 711, 714 (Ala. Civ. App. 2001), and Norland, 563 So.2d at 1057-58. The juvenile court might have intended to punish the mother for defiance of the visitation provision; however, it clearly sought compliance with the visitation provision. See Parker v. Parker, 640 So.2d 979, 981 (Ala. Civ. App. 1994). We conclude that the finding of contempt was civil in nature, although it had characteristics of both criminal and civil contempt.
The mother's entire argument on appeal regarding the juvenile court's finding of contempt assumes that the juvenile court held her in criminal contempt. Because the mother does not argue on appeal that the juvenile erred by finding her in civil contempt, that argument is waived. See Gary v. Crouch, 923 So.2d 1130, 1136 (Ala. Civ. App. 2005) ("[T]his court is confined in its review to addressing the arguments raised by the parties in their briefs on appeal; arguments not raised by the parties are waived."); see also Palmer v. Palmer, 192 So.3d 12, 16 (Ala. Civ. App. 2015).
Next, the mother argues that the juvenile court erred by ordering her to pay the father's attorney fees. The mother argues that the award of attorney fees should be reversed, because an award of attorney fees is not allowed in a case of criminal contempt. Again, as already determined, this is a case of civil contempt. In Moody v. State ex rel. Payne, 355 So.2d 1116, 1119 (Ala. 1978), our supreme count explained that it is within the sound discretion of a trial court to award a reasonable attorney fee to a prevailing party in a civil-contempt action. See also Norland, 563 So.2d at 1058 ("We find that the trial court, in addition to punishment for past disobedience, was attempting to compel compliance with its orders in the future. As such, its contempt findings were both criminal and civil in nature. ... Accordingly, the award of attorney's fees was not error."). The mother's argument is, therefore, without merit. However, the mother also briefly argues, without citation to authority, that the juvenile court erred by ordering her to pay the father's attorney fees because the father's attorney failed to provide an "amortization of her fees." As pointed out by the father, we have previously concluded that a trial court did not abuse its discretion when a *68 parent failed to offer evidence demonstrating "the amount of fees he was obligated to pay his attorney."
"In Broadway v. Broadway, 184 So.3d 376, 386 (Ala. Civ. App. 2014), this court, relying on Lackey v. Lackey, 18 So.3d 393, 402 (Ala. Civ. App. 2009), stated that '[a] trial court may rely on its knowledge and experience in assessing the value of an attorney's services even without evidence regarding the reasonableness of the attorney fees.' "
L.M. v. K.A., 177 So.3d 1174, 1182 (Ala. Civ. App. 2015) (emphasis added). We conclude that the mother failed to support her argument with citation to relevant authority or to demonstrate that the juvenile court abused its discretion by ordering her to pay the father's attorney fees.
Next, the mother argues that the juvenile court erred by declining to modify the visitation provision. The mother, citing Carr v. Howard, 777 So.2d 738 (Ala. Civ. App. 2000), and L.M., supra, asserts that the frequency of visitation is not in the best interest of the child.
" ' "Visitation, like custody, is a matter that rests soundly within the broad discretion of the trial court, and its determination regarding visitation must be affirmed absent a finding that the judgment is not supported by any credible evidence, and that the judgment, therefore, is plainly and palpably wrong." Cohn v. Cohn, 658 So.2d 479, 482 (Ala. Civ. App. 1994). Visitation is determined on a case-by-case basis, and the trial court, in ruling on visitation, is guided by the children's best interests. Id.'
" Carr v. Howard, 777 So.2d 738, 741-42 (Ala. Civ. App. 2000)."
L.M., 177 So.3d at 1181. In Carr, we reversed a judgment that had required the children in that case to fly from Illinois to Alabama every other weekend. We explained that
"the current visitation schedule, requiring either the two daughters or the two sons to travel every other weekend from Chicago to Baldwin County or from Baldwin County to Chicago, respectively, is disruptive to the family unit, creates problems in family stability, and, ultimately, is not in the best interests of the children. The frequency and length of the travel required, in our opinion, must be a factor in the consideration of what serves the children's best interests. We do not believe the best interests of the children are served by having them spend every other weekend fighting the crowds at O'Hare International Airport."
Carr, 777 So.2d at 742. Similarly, in L.M., we reversed a judgment that had required a seven-year-old child to fly from Colorado to Alabama at least twice per month. We remanded the cause for the trial court to "fashion[ ] an equitable visitation schedule that is less disruptive for the child." L.M., 177 So.3d at 1181.
Carr and L.M. are, however, distinguishable from this case because, in this case, the juvenile-court judge interviewed the child in camera. The in camera interview was not recorded or otherwise made part of the record on appeal. In the absence of a transcript of an in camera interview with a child, a reviewing court must assume that the evidence the trial court received during that interview is sufficient to support that court's judgment. See Casey v. Casey, 85 So.3d 435, 441 (Ala. Civ. App. 2011) (citing Waddell v. Waddell, 904 So.2d 1275, 1279-80 (Ala. Civ. App. 2004) ; Hughes v. Hughes, 685 So.2d 755, 757 (Ala. Civ. App. 1996) ; and Reuter v. Neese, 586 So.2d 232, 235 (Ala. Civ. App. 1991) ). Accordingly, we cannot say that the mother has demonstrated that the juvenile *69 court erred by declining to modify the visitation provision.
Next, the mother asserts that the juvenile court erred by requiring her to pay the costs of transportation for visitation; however, the mother does not make a legal argument or cite any authority to support her contention. " Rule 28(a)(10) [,Ala. R. App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position. If they do not, the arguments are waived." White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala. 2008).
Next, the mother presents a one-paragraph argument that the juvenile court erred by concluding that the father had "prove[d] his case" because, she says, he did not prove that the mother "willfully refused or failed to comply with the court order." As already mentioned, our review of the record reveals that there was evidence, including the mother's own testimony, demonstrating that she had refused to comply with the visitation provision. See, e.g., Broadnax v. Broadnax, 558 So.2d 929, 930 (Ala. Civ. App. 1989).
Next, the mother argues that the juvenile court erred by denying her postjudgment motion without a hearing; however, the mother has failed to demonstrate or to specify any harmful error.
" 'Rule 59(g), Ala. R. Civ. P., provides that postjudgment "motions remain pending until ruled upon by the court (subject to the provisions of Rule 59.1) but shall not be ruled upon until the parties have had opportunity to be heard thereon." This court has held that
" ' "[g]enerally, a movant who requests a hearing on his or her postjudgment motion is entitled to such a hearing. Rule 59(g), Ala. R. Civ. P.; Flagstar Enters., Inc. v. Foster, 779 So.2d 1220, 1221 (Ala. 2000). A trial court's failure to conduct a hearing is error. Flagstar Enters., 779 So.2d at 1221."
" ' Dubose v. Dubose, 964 So.2d 42, 46 (Ala. Civ. App. 2007) ; see also Staarup v. Staarup, 537 So.2d 56, 57 (Ala. Civ. App. 1988) ("[ Rule 59(g) ] mandates that, when a hearing is requested on a motion for new trial, the hearing must be granted.").
" '[However], this court has recognized an exception to the general rule that the denial of a postjudgment motion without conducting a requested hearing is reversible error. See Gibert v. Gibert, 709 So.2d 1257, 1258 (Ala. Civ. App. 1998) ("A trial court errs by not granting a hearing when one has been requested pursuant to Rule 59(g) ; however, that error is not necessarily reversible error."). "On appeal, ... if an appellate court determines that there is no probable merit to the motion, it may affirm based on the harmless error rule." Palmer v. Hall, 680 So.2d 307, 307-08 (Ala. Civ. App. 1996) ; see also Lowe v. Lowe, 631 So.2d 1040, 1041 (Ala. Civ. App. 1993) ("Denial of a Rule 59 motion without a hearing is reversible error if the movant requested a hearing and harmful error is found."). The Alabama Supreme Court has stated:
" ' "Harmless error occurs, within the context of a Rule 59(g) motion, where there is either no probable merit in the grounds asserted in the motion, or where the appellate court resolves the issues presented therein, as a matter of law, adversely to the movant, by application of the same objective standard of review as that applied in the trial court."
" ' Greene v. Thompson, 554 So.2d 376, 381 (Ala. 1989). However, "[w]hen there is probable merit to the motion, *70 the error cannot be considered harmless." Dubose, 964 So.2d at 46.'
"[ Wicks v. Wicks,] 49 So.3d [700,] 701 [ (Ala. Civ. App. 2010) ]."
Whitman v. Whitman, 75 So.3d 1192, 1193-94 (Ala. Civ. App. 2011). Accordingly, the juvenile court's refusal to conduct a postjudgment hearing is not reversible error.
In conclusion, the circuit court properly transferred the appeal to this court. To the extent that the juvenile court might have erred by admitting the exhibits into evidence, or by not conducting a postjudgment hearing, those errors were harmless. The mother failed to demonstrate that the juvenile court committed reversible error by declining to modify the visitation schedule or by ordering her to pay the father's attorney fees. The mother waived the arguments that juvenile court abused its discretion by finding her in civil contempt, by concluding that the father had "prove[d] his case," and by ordering her to pay the transportation costs of the child for visitation. Accordingly, the juvenile court's judgment is affirmed.
Finally, we deny the mother's motion to strike the father's appellate brief because his 38-page brief does not exceed the 70-page limitation provide by Rule 28(j)(1), Ala. R. App. P. The mother is simply incorrect in her assertion that his brief is a reply brief.
AFFIRMED.
Thompson, P.J., and Pittman and Donaldson, JJ., concur.
Moore, J., concurs in the result, without writing.

October 20, 2016, is the date of the first entry on the copy of the State Judicial Information System case-action-summary sheet that is provided in the record on appeal. We have relied on agreements of the parties and electronic stamps that appear on some documents for certain dates recounted in this opinion.

Although not offered into evidence, portions of the September 9, 2013, custody order and of the order entered regarding the father's objection-to-relocation motion were read aloud by the parties' attorneys during the trial.

The father testified that the exhibits were e-mail and text messages that the parties had exchanged. The mother testified that, although it was possible that she had written the messages, she did not know or did not remember whether she had written the messages. She testified that she recognized her e-mail address on some of the exhibits, but, she said, "someone ha[d] hacked into [her] cell phone account," certain messages looked "familiar" but might not be complete, and certain messages merely looked "like an e-mail that I would have sent."